UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CLASSIC SOFT TRIM, INC.,
and ROADWIRE, LLC,

    Plaintiffs,

v.                                                 Case No. 6:18-cv-01237-WWB-GJK

ROSS ALBERT, KATZKIN LEATHER,
INC., CLEARLIGHT PARTNERS,
LLC, and CLEARLIGHT PARTNERS
MANAGEMENT, LLC

Defendants.
_____/

**PLAINTIFFS' OPPOSED MOTION FOR LEAVE TO TAKE TEN ADDITIONAL DEPOSITIONS BEYOND THE RULE 30 LIMIT**

      Plaintiffs, Classic Soft Trim, Inc. and Roadwire, LLC (collectively "Plaintiffs"), respectively seek leave to take an additional ten (10) depositions beyond the Rule 30 limit of ten for a total of twenty (20) depositions.  These additional depositions are necessary because this case deals with seven fact-intensive causes of action including antitrust claims against Defendants that require multiple corporate representatives and fact witnesses to address. Moreover, these depositions are the most efficient and effective means of gathering information given a particularly arduous discovery process and the refusal of Defendants and third parties to produce written discovery, even after Court Order.  Finally, the depositions

will likely be taken remotely, substantially alleviating any cost or burden on opposing party to attend the depositions.

## I. MEMORANDUM OF LAW

Fed. R. Civ. Proc. 30(a)(2)(A)(i) sets the default limit on the number of depositions a party may take at ten (10). A party is required to obtain leave of court to take more than ten depositions, and the Court must grant such leave to the extent consistent with Rule 26(b)(1) and (2) "[l]eave to take additional depositions should be granted when consistent with the principles of Rule 26(b)(2)." Notes of the Advisory Committee (1993) to Fed. R. Civ. Proc. 30. See also *Goines v. Lee Mem'l Health Sys.*, Case No: 2:17-cv-656-FtM-29CM (M.D. Fla. Sep. 14, 2018). Rule 26(b)(1) defines the scope of discovery as follows:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Rule 26(b)(2) notes the court may alter the limit on the number of depositions taking into consideration the following factors:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;
>
> (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or
>
> (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(A), (C).

Courts in this district generally require the moving party to "justify the necessity of the depositions already taken in the case" and make a particularized showing of why the additional depositions are necessary. See *Jones-Walton v. Villas at Lake Eve Condominium Assoc., Inc.,* No. 6:15-cv-995-Orl-22TBS, 2017 WL 1653735, at *2 (M.D. Fla. May 2, 2017) (internal quotation marks omitted) (see also *Tardif v. People for the Ethical Treatment of Animals*, No. 2:09-cv-537-FtM-29SPC, 2011 WL 2413630, at *1 (M.D. Fla. June 13, 2011).

II. **ARGUMENT: PLAINTIFFS SHOULD BE GRANTED LEAVE TO TAKE TEN ADDITIONAL DEPOSITIONS**

    a. **The Claims In This Matter Are Fact-Intensive And Complex Requiring Additional Depositions**

This is a complex track three case wherein Plaintiffs have alleged seven causes of action against their former executive Ross Albert, Katzkin Leather and their parent companies ClearLight Partners, LLC and ClearLight Partners Management, LLC. The parties are competitors in the aftermarket automobile restyler leather industry. Plaintiffs have alleged a broad pattern and practice of unfair competition and violations of the Sherman Act as well as other business torts against Defendants nationwide. Dkt. 104. Plaintiffs allege that Defendants systematically research and target Plaintiffs' most prosperous operational branches of leather interior installation and leather kit purchases and employ tortious tactics to steal Plaintiffs' market-specific trade secrets, customers, contracts, and employees. *Id*. Antitrust cases are necessarily fact intensive. *Convad Communications Company v. Bell South Corporation* (11th Cir. 2002) 299 F.3d 1272, 1279; *Tiftarea Shopper, Inc. v. Ga. Shopper, Inc*. (11th Cir. 1986) 786 F.2d 1115, 1118. Plaintiffs' additional causes of action for business tort and pursuant

FDUTPA, Ohio Trade Secrets Law and Common Law Prohibition Unfair Competition, the Computer Fraud and Abuse are equally fact-intensive requiring additional depositions.

### b.   Plaintiffs Are Unable To Obtain The Information By Any Other Way Due To Defendants' Abuse Of The Discovery Process

Plaintiffs have diligently pursued written discovery in this matter, but every attempt has been stonewalled resulting in eleven (12) discovery motions, one of which is still pending, Dkt. 269. [See Docket #s 37, 86, 127, 146, 158, 196, 197, 207, and Case No. 8:19-mc-00012-DOC-KES). Even with consistent rulings ordering Defendants and third parties to comply there is still major obstruction and delays occurring, forcing Plaintiffs to run out of time and to now need to complete their discovery with multiple depositions.

An example of the obstruction is evident from the conduct of third party Classic Design Automotive, a Katzkin authorized restyler, who was ordered to comply with Plaintiffs' subpoena and perform a search for and produce ESI. Dkt 229. Once records and an electronic search were received by Plaintiff it was apparent that a search compliant with the Court's order had not been performed because responsive records Plaintiffs have retrieved from other sources were not produced. Plaintiffs confirmed the missing records in depositions of Classic Design Automotive's principal John Held and its IT expert hired to perform the ESI search, Richard Conner. After it was confirmed that not all devices were searched and Mr. Conner was not even asked to search all the emails of several key email addresses, a renewed motion was filed with detailed exhibits and charts supporting the requested order, that the CDA devices be turned over for a neutral forensic search. [Se Dkt. 269, Exhibits 1-7]. Similarly, Plaintiffs have been ordered to try to work out dozens of unanswered Rule 34 requests to Defendants

Katzkin and CLP, that have been objected to causing the Court to order the attempted facilitation by a third party. Plaintiffs now need multiple depositions as with these pending discovery issues outstanding, and the discovery cut off set for June 24, 2020, Plaintiffs have no other method to try to complete their discovery.

    **c.    The Discovery Sought Is Unique and Cannot Be Obtained From Another, Less Burdensome Source**

Plaintiffs have already taken the depositions of the following individuals:

1. <u>Peter Kim.</u> Mr. Kim is Katzkin's current CFO and former principal at ClearLight Management with knowledge of ClearLight's control over Katzkin's operations through its board of directors including the illegal conduct against Plaintiffs.

2. <u>Richard Conner.</u> Mr. Conner is the IT expert hired by CDA to perform a search of CDA's electronic devices pursuant. Mr. Conner's deposition was required to prove that CDA had not complied with the Court's Order Dkt. 229 and Mr. Conner had not imaged all devices or searched for required requests.

3. <u>John Held.</u> Mr. Held is knowledgeable of the plan and process to build out CDA and intercept CST customer contracts for the benefit of Katzkin leather and determinant of Roadwire and CST. Mr. Held's deposition was cut short when it was determined that records relevant to questioning him (which had been ordered by the Court (Dkt. 229)) were not produced.

4. <u>Tim Clyde</u>. Mr. Clyde is the President and CEO of Katzkin Automotive and is knowledgeable about the operations of Katzkin and controlling influence of ClearLight, including the hiring of Ross Albert.

5. <u>Dave Sheffler</u>.  Mr. Sheffler is the Regional Sales Director of Katzkin and personally traveled to Orlando Florida on a regular basis to facilitate building out CDA's operations, met with CST's employees and made false representations that CST was going out of business in order to cause the mass exodus of employees on March 16, 2016.

Additionally, the following depositions have been scheduled and are being scheduled with Defense counsel to take place in the upcoming weeks:

6. <u>Defendant Ross Albert</u>.  Mr. Albert is knowledgeable about the specific allegations against him, his employment with Classic Soft Trim, his misrepresentations to Plaintiffs employees, and his employment with Katzkin.

7. <u>Ron Leslie</u>. Mr. Leslie is Katzkin's Vice President of Restyler Sales and is the individual who initially engaged Ross Albert in early 2015 with an extremely lucrative territory sales manager proposal while Mr. Albert continued to work with for CST for the benefit of Katzkin until March 2016.

8. <u>Dr. Henry Kawathy</u>.  Dr. Kawathy is Defendants' antitrust expert.

9. <u>Greg Vogel</u>.  Greg Vogel is a former CST executive who, similar to Ross Albert in Orlando, has knowledge regarding his sabotage of CST operations in Cincinnati for the benefit of Katzkin and ClearLight.  Mr. Vogel has knowledge related to the financial investment Katzkin provided him as well as the trade secret and confidential, proprietary information he provided to Katzkin.

10. <u>Daniel Valencia</u>.  Mr. Valencia is knowledgeable about the allegations in the complaint regarding him specifically including lies, threats and intimidation of CST Orlando

employees to leave and join Katzkin restyler CDA. While Defendants attempt to absolve themselves of this conduct asserting Mr. Valencia's conduct has nothing to do with them, Mr. Valencia was present at meetings and has personal knowledge that this illegal conduct was done at the direction of Dave Sheffler and Ross Albert.

Plaintiffs respectfully seek leave of Court to take the depositions of the following essential witnesses:

1. Nayomi Soto. Ms. Soto is the individual that personally intercepted CST contracts for Roadwire leather with dealerships and gave them to John Held to install with Katzkin leather.

2. Bill North. Mr. North is a Katzkin salesman knowledgeable about the sales operations of Katzkin in Cincinnati and false representations made to dealerships and customers in Cincinnati.

3. Brooks Mayberry. Mr. Mayberry is the Chairman of Katzkin's board of directors. Mr. Mayberry has submitted several declarations in this matter attesting to his knowledge of Katzkin operations. Mr. Mayberry is unique in that he joined Katzkin in 1998 as CEO wherein he oversaw all operations and thereafter became Katzkin's president in 2003. Mr. Mayberry is the only Defense witness with personal knowledge of Katzkin operations relevant to the allegations in the Complaint that took place prior to 2007.

4. Jeff Manessero. Mr. Manessero is a principal at ClearLight Partners and board member of Katzkin. Mr. Manessero testified on behalf of Katzkin and Clearlight on January 7, 2020 at an evidentiary hearing on Defendants' overuse of the AEO designation on

produced discovery. During that hearing, Mr. Manessero testified that he is a member of a small group of ClearLight principals that oversee the control over Katzkin.

5. <u>Michael Kaye</u>. Mr. Kaye is the senior partner of CLP and is knowledgeable about the operations of Clear Light Partners and ClearLight Partners Management, the relationship between those entities and Katzkin, the acquisition of Katzkin, and the events in 2015 where Defendants were put under substantial pressure from their lender to increase sales and profits.

6. <u>Jeff Gambill.</u> Mr. Gambill has knowledge related to Katzkin inducing him to terminate his relationship with CST and acquire CST employees, customers and contracts in Cincinnati.

7. <u>Christina Baroni</u>. Mr. Baroni has knowledge related to Ross Albert and Daniel Valencia accessing CST computers without permission as well as knowledge about the stealing of CST customer lists and other trade secrets.

8. <u>Daniel Feliciano</u>. Mr. Feliciano has knowledge regarding the false and misleading information given to CST Orlando employees ("CST is closing, CST has moved locations to Silver Star Road, CST will lay off all employees") as well as CST/Roadwire customer dealerships, by Dave Sheffler, Ross Albert, Ron Leslie, and Daniel Valencia.

9. <u>Deven Patel</u>. Mr. Patel is a former CST Orlando shop employee with knowledge of items stolen from CST Orlando and the secret meeting or "job fair" of CST employees that was held by Dave Sheffler, Ross Albert in March 2016, and the payment of cash to CST employees by CDA for work to build out CDA facilities.

10. <u>John Donnellan</u>.  Mr. Donnellan is the manager of CDA and is knowledgeable of the Orlando claims regarding CDA eliminating CST/Roadwire from the Orlando market and the price increase to consumer dealerships thereafter.

During the meet and confer process, Defense counsel argued that the additional depositions Plaintiff seeks are irrelevant and duplicative.  This is not the case. Each of the deponents are Defendants employees and Plaintiffs former employees and competitors who each had direct involvement in causing the damages that Plaintiffs allege, and each has unique knowledge of facts that are not readily obtainable from any other source.  Moreover, in addition to their direct involvement with the complained-of activities[1], Defendants have identified many of the proposed deponents as having relevant information.  Specifically, Defendants have identified Ross Albert, Tim Clyde, Brooks Mayberry, Peter Kim, Ron Leslie, Dave Sheffler, Bill North, Michael Kaye, Jeff Manessero, Daniel Valencia, John (or Jack) Donnellan and John Held in their disclosures as potential witnesses who possess relevant information that could be called at trial.   See ClearLight Katzkin Disclosure **Exhibit A** and Ross Albert Disclosures **Exhibit B**.  <u>This weighs heavily in favor of allowing them to be deposed</u>.  See *Price v. Gwinnett Family Dental Care, LLC*, No. 06-CV-2659-BBM-GGB, 2007 WL 3477771, at *4 (N.D. Ga. Oct. 31, 2007) ("Most of the witnesses Plaintiff seeks to depose, however, have been identified by Defendant as possible witnesses in this case. . . . To the extent the individuals Plaintiff seeks to depose remain potential witnesses for the defense, the Court finds that Plaintiff is entitled to inquire into their knowledge of the relevant facts to avoid

---

[1] Defense expert Dr. Kawathy and IT expert Richard Conner have no involvement in the complained of activities.

9

surprise at trial.").

Here, Plaintiffs assert the ten (10) depositions taken and scheduled in the weeks following this filing were necessary but insufficient. Because this case deals involves over ten years of relevant and complex antitrust conduct, it justifies allowing more depositions. The additional ten requested are reasonable under these circumstances.

### d. All Depositions Will Likely Be Taken Remotely

All existing and planned depositions will be taken by "Zoom" where the deponent is home and counsel are in remote locations. Given the stay at home orders in California, Florida in Ohio, where the depositions requested will take place, the inconvenience to counsel and witnesses is substantially minimized. This remote procedure has been in place for years, but is now being used frequently based on the pandemic. It is well accepted. See Rule 30(b)(4) (allowing deposition "by remote means"); *Balu v. Costa Crociere S.P.A.*, No. 11-60031-CIV, 2011 WL 3359681, at *2 (S.D. Fla. Aug. 3, 2011) (noting "depositions are now readily taken inexpensively by internet video (e.g., Skype) or through somewhat more expensive, but still efficient, video conferencing facilities."); *Hernandez v. Hendrix Produce, Inc.*, 297 F.R.D. 538, 541 (S.D. Ga. 2014) ("Skype depositions have been used where travel is cost prohibitive" - collecting cases); *In re Willingham,* No. 3:11-AP-00269-JAF, 2014 WL 3697556, at *4 (*Bankr.* M.D. Fla. July 18, 2014) ("ample case law recognizes that a videoconference deposition can be an adequate substitute for an in-person deposition, particularly when significant expenses are at issue"). Accordingly, as an additional basis for the Court to find good cause, remote depositions will be used to complete discovery.

/ / /

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully the Court grant Plaintiffs leave to take ten depositions in addition to the ten provided by Rule 30, including Nayomi Soto, Bill North, Brooks Mayberry, Michael Kaye, Jeff Manassero, Jeff Gambill, Christina Baroni, John Donnellan, Deven Patel and Daniel Feliciano.

Dated:  May 20, 2020                                   Respectfully submitted,

By:  _____

**MAHAFFEY LAW GROUP, PC**
Douglas L. Mahaffey, ESQ, (pro hac vice)
California Bar No. 125980
20162 SW Birch St, Ste 300
Newport Beach, CA 92660
Telephone: 949-833-1400
Telecopier: 949-263-8736

**BAKER & HOSTETLER LLP**
Kevin W. Shaughnessy
Florida Bar No. 0473448
P. Alexander Quimby
Florida Bar No. 099954
Primary email: aquimby@bakerlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF GOOD FAITH PURSUANT TO LOCAL RULE 3.01(g)

The undersigned counsel hereby certifies a good faith effort to resolve the issues raised in this Motion prior to filing both through written and telephone communication but the parties were unable to reach a resolution on all issues. Plaintiffs originally intended to request the deposition of Huy Dang Vu, ClearLight Partners and ClearLight Management's CFO. Mr. Vu is identified as a potential witness in ClearLight and Katzkin's disclosures and has produced declarations in this matter; however, during the meet and confer effort Defense counsel represented that Mr. Vu would not be able to provide any ClearLight information beyond that of Mr. Kaye and Mr. Manessero. Accordingly, Plaintiffs removed Mr. Vu from the list of proposed deponents. The parties were unable to reach agreement on the other deponents.

Dated:  May 20, 2020                               Respectfully submitted,

By: _____

**MAHAFFEY LAW GROUP, PC**
Douglas L. Mahaffey, ESQ, (pro hac vice)
California Bar No. 125980
20162 SW Birch St, Ste 300
Newport Beach, CA 92660
Telephone: 949-833-1400
Telecopier: 949-263-8736

**BAKER & HOSTETLER LLP**
Kevin W. Shaughnessy
Florida Bar No. 0473448
P. Alexander Quimby
Florida Bar No. 099954
Primary email: aquimby@bakerlaw.com
*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I certify that on May 20, 2020 I electronically filed a copy of the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of the electronic filing to the following:

| | |
|---|---|
| Kevin W. Shaughnessy<br>kshaughnessy@bakerlaw.com<br>Paul Alexander Quimby<br>aquimby@bakerlaw.com<br>Meagan Leigh Martin<br>mmartin@bakerlaw.com<br>BAKER & HOSTETLER LLP<br>SunTrust Center<br>200 South Orange Avenue, Suite 2300<br>Orlando, FL 32802<br><br>***Attorneys for Plaintiffs, Classic Soft Trim, Inc. and Roadwire, LLC*** | Don Howarth<br>Suzelle M. Smith<br>Tomas S. Glaspy<br>HOWARTH & SMITH<br>523 W. 6th St., Suite 728<br>Los Angeles, CA 90014<br>Email: dhowarth@howarth-smith.com<br>Email: ssmith@howarth-smith.com<br>Email: tglaspy@howarth-smith.com<br><br>***Attorneys for Katzkin Leather, Inc., Clearlight Partners, LLC and Clearlight Partners Management, LLC*** |
| Courtney B Wilson, Esq.<br>Lindsay Alter, Esq.<br>LITTLER MENDELSON, P.C.<br>Wells Fargo Center<br>333 SE 2nd Ave., Ste. 2700<br>Miami, FL 33131<br>Email: CWilson@littler.com<br>Email: LAlter@littler.com<br><br>***Attorneys for Defendant Ross Albert*** | |

/s/ Stephen Rapaport
Stephen Rapaport