UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:18-cv-01237-PGB-GJK

CLASSIC SOFT TRIM, INC.,
and ROADWIRE, LLC,

    Plaintiffs,

v.

ROSS ALBERT and
KATZKIN LEATHER, INC.,

    Defendants.
_____/

**DEFENDANT, ROSS ALBERT'S *SECOND* MOTION TO DISQUALIFY COUNSEL/REVOKE *PRO HAC VICE* ADMISSION, AND FOR ORDER TO SHOW CAUSE RE: OFFERING IMPROPER INDUCEMENTS TO FACT WITNESSES**

Defendant, Ross Albert, on distinct and additional grounds, moves for a second time to disqualify and/or revoke the *pro hac vice* admission of Plaintiffs' out of state counsel, Douglas Mahaffey and Mahaffey Law Group, P.C., and to issue an Order to Show Cause concerning Plaintiffs' counsel's offering inducements to Albert and other fact witnesses to testify favorably to Plaintiffs.

**MEMORANDUM OF LAW**

    **I.**    **Relevant Facts and Procedural Background.**

Ross Albert is a former employee/manager of Plaintiff, Classic Soft Trim's ("CST") operations in Orlando, Florida. CST installs leather automobile interiors manufactured by its sister company, Roadwire.[1]

---

[1] Albert was never employed by co-Plaintiff, Roadwire LLC, which nevertheless joins in the claims against him without even a hint of justification.

1

On March 18, 2016, CST fired Daniel Valencia, who supervised the leather installers in CST's Orlando branch. Doc. 30-1, p. 70. Indeed, CST summoned local police to escort Valencia, his girlfriend, Naiomy Soto, and other office workers off the premises. *Id*. Immediately thereafter, Albert resigned from CST.

Subsequently, Albert joined Katzkin Leather, Inc., a *manufacture*r of leather interiors and an alleged competitor of Plaintiffs. Valencia, Soto and other office workers joined Classic Design, another *installer* of leather interiors that purchased Katzkin leather and competed with CST. Doc. 30-1, p. 70.

Thereafter, on March 30, 2016, CST's General Counsel attempted to elicit statements from Valencia and Soto by luring them to the CST office in an attempt to recover their last paychecks and personal property left behind when CST had them removed by the local police. Ex. A – "Statement of Valencia & Soto." However, when they discovered the ruse, Valencia and Soto refused to provide CST's attorney any statements. *Id*.

Almost a year and a half later, CST sued Albert, Valencia, Classic Design, and Classic Design's principals. Doc. 30-1, p. 4. CST alleged a conspiracy between Albert, Valencia and Classic Design, to move CST's employees and customers from CST to its competitor Classic Design. *Id*. In response to the lawsuit, Valencia, acting *pro se*, denied any of the alleged wrongdoing. Doc. 30-1, p. 70 – Answer of Valencia. Subsequently, in the Spring of 2018, Valencia responded, under oath, to CST's interrogatories and again denied any knowledge of the alleged wrongdoing. Ex. B – Valencia's Answers to CST's Interrogatories.

Only a few weeks later, on June 21, 2018, Valencia (and his girlfriend, Soto) signed detailed affidavits drafted by CST's attorneys. Exs. C & D. These affidavits contradicted Valencia's earlier repeated denials of knowledge of any of the alleged misconduct. Then, within

days of Valencia and Soto signing the affidavits proffered by CST's lawyers, CST voluntarily dismissed all of its claims against Valencia. Doc. 30-2, p. 90.

Thereafter, CST's lawyers withheld the Affidavits from discovery for the next two years, claiming the Affidavits were the attorneys' work product. Ex. E – CST's Privilege Log. However, in the Spring of 2020, Plaintiffs attempted to use the affidavits in this litigation, proffering them as deposition exhibits. Yet, despite repeatedly noticing Valencia and Soto for depositions, Plaintiffs attorneys also repeatedly cancelled those depositions at the last minute.

Plaintiff's corporate representative subsequently confirmed that Plaintiffs' efforts to persuade Valencia and Soto to sign the affidavits were undertaken by Plaintiffs' lawyers:

> Q. Do you know what, if anything, was said to Mr. Valencia to persuade him to sign the affidavit?
>
> MR. SHAUGHNESSY: Same objection.
>
> A. I don't know the answer to that. Either I didn't have conversations with Danny, and I don't believe any Classic Soft Trim employees did. I believe that was conversations with legal counsel.

Forrister, p. 67.[2] And Plaintiffs' lawyers objected to Forrister's disclosure of the reasons for CST's dismissal of Valencia immediately after he and his girlfriend signed the proffered affidavits:

> Q. Why did Classic Soft Trim dismiss the lawsuit against Mr. Valencia [in July of 2018]?
>
> \*   \*   \*
>
> A. July of '18. I believe that would probably fall under attorney-client privilege in terms of what -- I mean, those are conversations that I had with -- with my attorney in July of '18 that led to that decision.

---

[2] Cited portions of the June 18, 2020 deposition of Aaron Forrister, Plaintiff's CEO and designated corporate representative, are attached as Exhibit F.

4844-8058-3371.1 049386.1006

> Q. I'm not asking you to disclose what your attorneys advised you. I'm asking what reason Classic Soft Trim had to make that decision?
>
> MR. SHAUGHNESSY: Object to the form to the extent that the reason was communicated by your lawyers. If there's an independent reason outside of the scope of your conversation with your lawyers, you can answer the question.
>
> A. I don't think there was a -- was a reason that was discussed outside of conversation with my lawyers related to that.

Forrister, pp. 64-65.

After CST dismissed Valencia, leaving Albert as the only remaining defendant in the state court action, he removed the action to this Court. Thereafter, Plaintiffs vastly expanded their claims in an attempt to allege antitrust/unfair competition claims against Katzkin & ClearLight across the country and over several years. Plaintiffs Second Amended Complaint is 100 pages long and contains over 400 separate paragraphs of allegations.[3]

In the ensuing, additional two years of litigation in this Court, Plaintiffs have pursued unprecedented discovery including dozens of document requests to parties, former parties, and non-parties, yielding production of tens of thousands of documents, the use of several forensic experts, and numerous depositions. Yet, near the conclusion of the discovery deadline Plaintiffs had uncovered no evidence to support their longstanding but wildly speculative and expansive claims.

In this context, desperate for any evidence favorable to their far-flung claims, Plaintiffs lawyers reverted to the strategy they had obviously employed before with Valencia; offer to dismiss pending claims against a fact witness in exchange for the witness providing testimony favorable to Plaintiffs. On July 30, 2020, almost two years since dismissing Valencia in exchange

---

[3] The great expansion of parties and subject matter was also accompanied by the appearance of new counsel. Plaintiffs, who had been represented by Baker & Hostetler, were now represented by California counsel with Baker & Hostetler serving merely as local counsel.

4844-8058-3371.1 049386.1006

for his signing an affidavit prepared by Plaintiffs' lawyers, they made an almost identical but equally improper proposal to Albert. And, after verbally making such an offer, Plaintiffs' counsel confirmed the offer in writing:

> <u>As confirmed in our meet and confer, my clients would entertain a dismissal of Ross Albert in exchange for him testifying truthfully about the extensive involvement with Katzkin he engaged in to destroy the Orlando branch operations, as now proven by the CDA records. This discussion must occur immediately or we will be filing a motion for evidentiary sanctions asking the Court to direct a finding on the two claims against Ross Albert based on his willful destruction and/or concealment of evidence and his false discovery responses. By our phone call today, I have completed my meet and confer on this motion and unless your advise in writing a willingness to frame a settlement agreement with Ross Albert agreeing to testify truthfully and provide his entire ESI, this<br>motion will be filed next week.</u>[4]

Ex. G, July 30, 2020 email from Douglas Mahaffey to Courtney Wilson [emphasis in original].

The difference this time, Albert was represented by counsel who immediately recognized it would be entirely unethical and improper to even engage in discussion of such an improper *quid pro quo*. Valencia, of course, was unrepresented and thus easy prey for Plaintiffs' counsel's improper and unethical manipulations.

## II. Plaintiffs Counsel's Efforts to Induce Fact Witnesses to Give Favorable Testimony is "Extremely Serious Misconduct."

Florida ethical rules, expressly incorporated into this Court's Local Rules[5], absolutely and unequivocally prohibit offering any inducement to a fact witness to give favorable testimony:

> A lawyer shall not:
> ....
> (b) fabricate evidence, counsel or assist a witness to testify falsely, or *offer an inducement to a witness,* except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable

---

[4] When Albert's counsel failed to respond, much less capitulate, Plaintiffs' counsel never filed the threatened motion.
[5] Lawyers practicing before this Court agree to be bound by the Florida Bar's professionalism rules. Local Rule 2.04(d).

5

4844-8058-3371.1 049386.1006

> compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.

R. Regulating Fla. Bar 4–3.4(b); see generally *The Florida Bar v. Wohl*, 842 So.2d 811 (2003). And courts applying this Rule have repeatedly emphasized the "extremely serious" nature of this misconduct:

> "Offering financial inducements to a fact witness is extremely serious misconduct" and is "an evil that should be avoided." *Fla. Bar v. Wohl*, 842 So. 2d 811, 816 (Fla. 2003). The Florida Supreme Court has explained, "The very heart of the judicial system lies in the integrity of the participants. Justice must not be bought or sold." *Fla. Bar v. Jackson*, 490 So. 2d 935, 936 (Fla. 1986) (internal modifications omitted).
>
> \*   \*   \*
>
> Any payment is inappropriate if it is contingent on the content of the witness's testimony or its helpfulness to the case. See *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 865 F. Supp. 1516, 1524–26 (S.D. Fla. 1994), aff'd in relevant part, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997) (imposing sanctions where payments of $493,103 and $147,000 to two witnesses were contingent on testimony being truthful, material, and helpful to defense); *Ward v. Nierlich*, 99–14227 CIV, 2006 WL 5412626, at \*4 (S.D. Fla. Sept. 20, 2006) (unpublished) (imposing sanctions where plaintiff's counsel promised lump-sum payment and stake in settlement agreement for testimony).

*United States ex rel. S. Site & Underground, Inc. v. McCarthy Improvement Co.*, 2017 WL 443486, at \*20 (M.D. Fla. Feb. 1, 2017)(denying order to show cause where witness was only offered $2,500 for actual expenses incurred and not was contingent on its content or usefulness of testimony)

> [T]he very heart of the judicial system lies in the integrity of the participants.... Justice must not be bought or sold. Attorneys have a solemn responsibility to assure that not even the taint of impropriety exists as to the procurement of testimony before courts of justice. It is clear that the actions of the respondent ... violates [sic] the very essence of the integrity of the judicial system and ... the oath of his office.

4844-8058-3371.1 049386.1006

*The Florida Bar v. Wohl*, 842 So.2d 815 quoting *Florida Bar v. Jackson,* 490 So.2d 935 (Fla.1986).  "Fair competition in the adversary system is secured by prohibitions against ... improperly influencing witnesses ... and the like." *Trial Practices, Inc. v. Hahn Loeser & Parks, LLP*, 260 So.3d 167, 171 (2018) quoting R. Regulating Fla. Bar 4-3.4 cmt.

Finally, as set forth in Plaintiffs' counsel's written proposal to Albert, the offered inducement was unequivocally tied to the content of Albert's testimony: " ... dismissal of Ross Albert in exchange for him testifying truthfully ***about the extensive involvement with Katzkin he engaged in to destroy the Orlando branch operations*** ... ."  Thus, as this Court's sister court held, this renders Plaintiffs' and their counsel's inducement even more repugnant.

> These acts of Lloyds and its counsel unquestionably violated the very heart of the integrity of the justice system. That Lloyds' willingness to pay was contingent on the condition that the testimony had to be helpful to Lloyds in its defense of this civil action makes even more pronounced the subversive and egregious nature of Lloyds' and its counsel's actions.

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526 (S.D. Fla. 1994), aff'd in part, 117 F.3d 1328 (11th Cir. 1997).

**Claims of Inducing Only "Truthful" Testimony are Immaterial.**

Nor does Plaintiffs' counsel's insertion of the talismanic "truthfully" somehow insulate his improper and unethical inducement from the proscription of Rule 4-3.4.  In fact, when the prior version of the Rule was deemed silent on this point, the Florida Supreme Court called for a revised Rule making clear that truthfulness, even if proved, was no defense whatsoever to the inducement of a fact witness to give favorable testimony.  *Florida Bar v. Cillo*, 606 So. 2d 1161, 1162 (Fla.1992).  In response to the Florida Supreme Court's concerns that the existing rule might permit a lawyer to induce truthful testimony in *Cillo*, the Rule was amended to make clear that the truth or falsity of the testimony sought is immaterial to the prohibition on inducing a fact witness

7

to give favorable testimony. *Florida Bar re: Amendments to Rules Regulating the Florida Bar*, 644 So.2d 282 (Fla. 1994).

> Further, the history of the rule indicates that it was amended to address situations such as the instant case. In 1992, in *Florida Bar v. Cillo*, 606 So.2d 1161 (Fla.1992), Cillo was accused of paying money to a former client as an inducement for the client to dismiss his Bar complaint against Cillo. ***The question arose whether it was misconduct to induce a witness to tell the truth by offering money or other valuable considerations***. At the time, there was no rule governing such a situation so we did not impose discipline for that conduct. We were concerned, however, that the payment of compensation other than costs to a witness could adversely affect credibility and fact-finding functions. We directed that a rule be developed to clarify that any compensation paid would be improper unless certain conditions were met. *Id*. at 1162. Thereafter, in 1994, in *Florida Bar re Amendments to Rules Regulating the Florida Bar*, 644 So.2d 282 (Fla.1994), we amended rule 4–3.4(b) to its present form. In so doing, we established that a witness may not be paid, unless the payments fall within the clearly delineated exceptions, such as payments for reasonable expenses or payments to an expert witness.

*The Florida Bar v. Wohl*, 842 So.2d 815 [emphasis added]. Thus, any claims that Plaintiffs' counsel only sought "truthful" testimony offer no refuge. "The prohibition applies with equal force to payment for *truthful* testimony as to payment for false testimony. " *Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 18, 2006); *quoting Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1525 (S.D. Fla. 1994), aff'd in part, 117 F.3d 1328 (11th Cir. 1997) quoting *In re Robinson*, 151 A.D. 589, 600, 136 N.Y.S. 548, 445 (1912), affirmed, 209 N.Y. 354, 103 N.E. 160 (1913)("The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.")

**An Express Offer to Settle/Dismiss Onerous Litigation is a Prohibited Inducement**

Nor can it be argued that a proposed dismissal or settlement, offering defendants immediate relief from incredibly costly and intrusive litigation that has continued for years, is not

an "inducement" prohibited by Rule 4-3.4.  If considered only for the cost of defending such vexatious litigation, its value is in the hundreds of thousands of dollars.  But this does not even capture the personal cost in the loss of privacy, time and emotional turmoil.  Thus, courts have rejected the notion that an inducement made as part of a settlement is somehow an unwritten exception to the Rule:

> At oral argument on this matter Plaintiffs' counsel attempted to make a distinction between the instant case and *Golden Door* by arguing that unlike in *Golden Door,* where the money was paid incident to an investigation, in this case the payment of money to witnesses was made incident to a settlement agreement. This is a distinction without a difference. Plaintiffs have cited no authority to support their novel argument and independent research by the undersigned has uncovered none. What's more, whether the money is paid incident to a settlement agreement, or simply to assure witness cooperation, ***the effect is the same: the witness has an incentive to testify favorably for the party paying him***.

*Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 18, 2006)[emphasis added].  Numerous cases have similarly held that even where there is yet no litigation, threatening to commence civil litigation based upon the content of a witness' testimony is a violation of the same ethical rules.  See, e.g., *Matter of Discipline of Callister*, 401 P.3d 211 (Nev. 2017)(threatening civil action, perjury and offering payment); *In re Smith*, 848 P.2d 612, 614 (Or. 1993)(lawyer suspended for 35 days for having letter delivered to IME doctor threatening to sue the doctor if his opinion disfavored the claimant).

Instead, the only exception to Rule 4-3.4, are modest payments to fact witnesses to compensate them, not reward them, for costs actually incurred in testifying, and entirely unrelated to the *content* of their testimony.

> Under the plain language of rule 4-3.4(b), payments to witnesses are proper—and outside the scope of the prohibition on the "offer [of] an inducement to a witness"—if they fall within one of the following three categories: **[1]** "reasonable expenses incurred by the witness in attending or testifying at proceedings"; **[2]** "a reasonable, noncontingent fee for professional services of an expert

9

> witness"; or **[3]** "reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings." R. Regulating Fla. Bar 4-3.4(b). This Court has described these categories as "clearly delineated exceptions" from the general prohibition of inducements to witnesses. *Wohl*, 842 So.2d at 815.

*Trial Practices, Inc. v. Hahn Loeser & Parks, LLP*, 260 So. 3d 167, 171 (Fla. 2018). Neither the Rule nor any case applying it has found any other exception, for a settlement or otherwise.

    **III.**    **The Deliberate and Calculated Violation of Applicable Ethical Rules Warrants Revocation of Mr. Mahaffey's *Pro Hac Vice* Admission in this Action.**

Plaintiffs' out-of-state counsel, Mr. Mahaffey, was admitted to practice in this District, for this matter, *pro hac vice*. See M.D. Fla. L.R. 2.04(d). Having abused that privilege by violating Florida ethical rules in the prosecution of this action, his *pro hac* admission should be immediately revoked.[6]

> "It is well-settled that federal courts have wide discretion in granting admission to practice pro hac vice." *Kohlmayer v. Nat'l R.R. Passenger Corp.*, 124 F. Supp. 2d 877, 879 (D.N.J. 2000). While it is true that there is a constitutionally based right to counsel of choice, it is also well established that the right is not absolute. *In re*

---

[6] Unfortunately, this second example of extreme misconduct by Mr. Mahaffey is again consistent with what the public record shows as to his behavior in other matters. In *Jay v. Mahaffey*, 218 Cal. App. 4th 1522 (2013), a commercial lessee's limited partners brought a malicious prosecution action against the lessors and the lessor's attorneys, Mr. Mahaffey and his co-counsel. The court found that the three elements necessary to establish a malicious prosecution case were present against all defendants, including Mahaffey. The court recognized there was ample "evidence of malice, and much of that malice relat[ed] directly to Mahaffey." Id. at 1544. The court in that case found that Mr. Mahaffey's "goal in the ongoing litigation was not to resolve genuine legal disputes, but to push [defendant] into a settlement." Id. at 1544. In another case, *Angus Petroleum Corp. v. Mahaffey & Assocs. PLC*, No. G055829, 2019 WL 4071030, at *1 (Cal. Ct. App. Aug. 29, 2019) the court ordered Mr. Mahaffey to pay more than $5 million in attorney's fees and costs in connection with a meritless fee dispute brought by Mr. Mahaffey. Also, in *Grunder v. Mahaffey*, No. G045013, 2012 WL 5420212 (Cal. Ct. App. Nov. 7, 2012) the court affirmed an order compelling Mr. Mahaffey to pay back a self-dealing loan to a trust. There, Mr. Mahaffey, as a trustee, lent himself $210,000 from a trust established by a father for the benefit of his five year old daughter. In *Petrik v. FN Projects, Inc.*, No. G033528, 2005 WL 775425 (Cal. Ct. App. Apr. 6, 2005) Mr. Mahaffey settled a client's case without client's approval or authorization. Id. at *1 ("Mahaffey submitted papers in opposition to the order to show cause, arguing (1) he did not have authority to extend the offer on behalf of the Petriks, therefore it was not binding…"). In *Trinity Christian Ctr. of Santa Ana, Inc. v. McVeigh*, 637 F. App'x 339, 340 Mahaffey's conduct resulted in an award of attorney's fees and costs for the opposing party. In *Mahaffey & Assocs. v. Kelter*, No. G034359, 2005 WL 2082894, at *5 (Cal. Ct. App. Aug. 30, 2005) the court upheld an arbitration award against Mr. Mahaffey and in the favor of one of his former clients and awarded that former client her costs on appeal. And in *Petrik v. Mahaffey & Assocs.*, No. G055779, 2019 WL 2591028, at *2 (Cal. Ct. App. June 25, 2019) Mahaffey was sanctioned for failing to comply with a court order.

> *BellSouth Corp.*, 334 F.3d 941, 955 (11th Cir. 2003), *citing Wheat v. United States*, 486 U.S. 153, 159, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988). "A litigant's freedom to hire the lawyer of his choice can be overridden if a court finds that the choice would interfere with the orderly administration of justice." *In re BellSouth Corp.*, 334 F.3d at 956.

*Mike Woods v. On Baldwin Pond, LLC*, No. 613CV726ORL41DAB, 2014 WL 12625077, at *1 (M.D. Fla. Nov. 26, 2014) (Baker, Mag. J.).

A disqualification motion is governed by local rules and federal common law. *Herrmann v. GutterGuard, Inc.*, 199 Fed. Appx. 745, 752 (11th Cir. 2006). The movant must prove the grounds for disqualification. *In re BellSouth Corp.*, 334 F.3d 941, 961 (11th Cir. 2003).

> Courts limit disqualification to instances where the attorney's conduct violates specific Rules of Professional Conduct, unless the conduct at issue threatens "the orderly administration of justice" or deliberately challenges the court's authority, in which cases courts are given wide latitude in disqualification determinations. *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997); *see Kleiner v. First Nat. Bank of Atlanta*, 751 F.2d 1193, 1210 (11th Cir. 1985) (disqualifying an attorney who deliberately disobeyed the court's protective order where the attorney's client contacted potential class members in "attempts to manipulate the decision of class members to join or opt out of class membership").

*Lancaster v. Harrow*, No. 8:17-CV-634-T-33JSS, 2018 WL 1274754, at *2 (M.D. Fla. Feb. 21, 2018), *report and recommendation adopted sub nom. Lancaster v. Bottle Club, LLC*, No. 8:17-CV-634-T-33JSS, 2018 WL 1242240 (M.D. Fla. Mar. 9, 2018). If a court bases disqualification on an ethical violation, "the court may not simply rely on a general inherent power to admit and suspend attorneys, without any limit on such power." *Schlumberger Techs., Inc. v. Wiley*, 113 F.3d 1553, 1561 (11th Cir. 1997). Instead, the court must identify a rule and find the lawyer violated it. *Id.*

11

In this case there is no question that Plaintiffs' counsel violated Rule 4-3.4, probably multiple times, and that specific ethical rule is directly applicable to this action through M.D. Fla. L.R. 2.04(d).

> Under this Court's local rules, the professional conduct of all members of the bar, admitted generally or specially, is governed by the Model Rules of Professional Conduct of the American Bar Association as modified and adopted by the Supreme Court of Florida. L.R. 2.04(d). Second, their professional conduct is governed by federal common law, "because motions to disqualify are substantive motions affecting the rights of the parties." *Herrmann v. Gutterguard, Inc.,* 199 F. App'x. 745, 752 (11th Cir. 2006).

*Local Access, LLC v. Peerless Network, Inc.*, No. 617CV236ORL40TBS, 2019 WL 5196879, at *16 (M.D. Fla. June 21, 2019).

Court's applying that same Rule have held that disqualification of counsel is among the appropriate remedies for such egregious misconduct. *Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *6 (S.D. Fla. Sept. 18, 2006 citing *Wagner v. Lehman Brothers Kuhn Loeb. Inc.,* 646 F.Supp. 643, 656 (N.D.Ill.1986)(same).

> In the instant case disqualification is warranted and outweighs any interest Plaintiffs had in retaining counsel of their own choosing. By paying defense witnesses for their testimony Plaintiffs and their counsel violated Rule 4–3.4(b) of the Rules of Professional Conduct, and in so doing corrupted the judicial process and committed a fraud on this Court. Once Plaintiffs became aware of and indeed assisted with the financial arrangement between themselves and the DeBeradinis, any interest Plaintiffs had in retaining the law firm of Rubin and Rubin dissipated. Accordingly, if Plaintiffs are deprived of counsel of their own choice, it is their own fault for engaging in a scheme to purchase the testimony of witnesses.

*Ward v. Nierlich*, 2006 WL 5412626, at *7.

The actions of other counsel who have forfeited their *pro hac vice* privileges in this Court pale by comparison. In *Woods,* the court had originally granted *pro hac vice* admission to out of state counsel. However, when the same attorney re-applied for *pro hac* admission, Magistrate Baker denied that request on the grounds that counsel had repeatedly violated Local Rules when

previously admitted: "The docket reveals that, upon being granted special admission to appear in this matter, Mr. Pelli displayed a consistent lack of knowledge regarding these rules, and his non-compliance led to delays and disruption of the orderly administration of justice." *Woods*, 2014 WL 12625077, at *1. See also, *Peterson v. PNC Bank, N.A.*, No. 6:18-CV-84-ORL-31DCI, 2019 WL 2022446, at *2 (M.D. Fla. May 8, 2019), *appeal dismissed*, No. 19-13082-GG, 2019 WL 7882649 (11th Cir. Nov. 29, 2019) wherein counsel was disqualified for using inadvertently disclosed privileged information.

### IV.     Conclusion

Accordingly, based upon the foregoing facts, Rules and case law, the Court should revoke Attorney Mahaffey's grant of *pro hac vice* admission and issue an Order to Show Cause regarding this blatant misconduct by Plaintiffs and their counsel in inducing fact witnesses to give favorable testimony in this action.

Dated this 14th day of September, 2020.          Respectfully submitted,

By: /s/ Courtney B. Wilson
Courtney B. Wilson, Esq.
Florida Bar No. 614580
E-Mail: cwilson@littler.com
Secondary: kljackson@littler.com
Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-Mail: lalter@littler.com
Secondary: btapia@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone:  (305) 400-7500
Facsimile:   (305) 603-2552

*ATTORNEYS FOR DEFENDANT, ROSS ALBERT*

4844-8058-3371.1 049386.1006

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 14th day of September, 2020, I filed a true and correct copy of the foregoing document with the Clerk of the Court via the CM/ECF Portal, and that the same was served on all counsel of record or pro se identified on the Service List via the CM/ECF Portal.

*/s/ Courtney B. Wilson*
Courtney B. Wilson, Esq.

4844-8058-3371.1 049386.1006

**SERVICE LIST**

| **ATTORNEYS FOR PLAINTIFFS, CLASSIC SOFT TRIM, INC. and ROADWIRE, LLC** | **ATTORNEYS FOR DEFENDANT, ROSS ALBERT** |

Kevin W. Shaughnessy, Esq.
Florida Bar No.: 473448
E-Mail: kshaughnessy@bakerlaw.com
Secondary: jnenstiel@bakerlaw.com
P. Alexander Quimby, Esq.
Florida Bar No. 099954
E-Mail: aquimby@bakerlaw.com
Secondary: jdorn@bakerlaw.com
BAKER & HOSTETLER, LLP
2300 SunTrust Center
200 South Orange Avenue
Post Office Box 112
Orlando, Florida 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

Douglas L. Mahaffey Esq. (*Pro Hac Vice*)
Email: dougm@mahaffeylaw.com
Secondary: kathryn@mahaffeylaw.com, michelle@mahaffeylaw.com, stephen@mahaffeylaw.com
MAHAFFEY LAW GROUP, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660
Telephone: (949) 833-1400
Facsimile: (949) 263-8736

Courtney B. Wilson, Esq. Florida Bar No. 0614580
E-Mail: cwilson@littler.com Secondary: kljackson@littler.com Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-Mail: lalter@littler.com Secondary: btapia@littler.com LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500
Facsimile: (305) 603-2552

**ATTORNEYS FOR DEFENDANT KATZKIN LEATHER, INC.**

Don Howarth, Esq. (*Pro Hac Vice*)
E-Mail: dhowarth@howarth-smith.com
Secondary: edouesnard@howarth-smith.com
Suzelle M. Smith, Esq. (*Pro Hac Vice*)
E-mail: ssmith@howarth-smith.com
Secondary: agilbert@howarth-smith.com
Padraic J. Glaspy, Esq. (*Pro Hac Vice)*
E-mail: pglaspy@howarth-smith.com
Tomas S. Glaspy, Esq. (*Pro Hac Vice*)
E-mail: tglaspy@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, California 90014
Telephone: (213) 955-9400
Facsimile: (213) 622-0791

4844-8058-3371.1 049386.1006