**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CLASSIC SOFT TRIM, INC., and**
**ROADWIRE, LLC,**

       **Plaintiffs,**

**v.**                                  **CASE NO. 6:18-cv-01237-WWB-GJK**

**ROSS ALBERT and KATZKIN LEATHER,**
**INC.,**

       **Defendants.**
_____/

**DEFENDANTS KATZKIN LEATHER AND ROSS ALBERT'S JOINT**
**MOTIONS *IN LIMINE***

      Pursuant to the operative Case Management Order (Doc. 28; Doc. 327) and Federal Rules of Evidence 401, 402, and 403, defendant Katzkin Leather, Inc. ("Katzkin") and defendant Ross Albert ("Albert") hereby bring the following motions *in limine*:

1.      To preclude any reference to or evidence of ClearLight's ownership of Katzkin or the investment of foreign money into ClearLight or Katzkin through Japanese company Secom;

2.      To preclude any reference to or evidence regarding discovery disputes, discovery compliance, or discovery issues, including in connection with setting or scheduling of depositions;

3.    To preclude any reference to or evidence of Katzkin paying legal fees for Albert or for any other person or entity in connection with this litigation;

4.    To preclude any reference to or evidence of interference with customer relationships or customers per August 13 Court Order;

5.    To preclude any reference to or use of the alleged and illegal recording of Ross Albert's March 18, 2016 telephone call or any testimony concerning the intercepted phone call by Aaron Forrister or anyone else; and

6.    To preclude any reference to or use of the testimony or statements of Valencia and Soto subsequent to the time they were offered inducements to testify favorably to Plaintiffs, including any Valencia and Soto Affidavits.

Each of these motions, addressed separately below, seeks the exclusion of evidence or argument at trial that is irrelevant, devoid of probative value, and likely to confuse, prejudice, or mislead the jury.  These motions should be granted and Plaintiffs should be precluded from offering such evidence, referring to such matters, and making statements or argument at trial about such matters.

## I.    EVIDENTIARY STANDARDS

It is a fundamental rule that evidence must be relevant to be admissible. Fed. R. Evid. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. Federal Rule 403 further allows a court to "exclude relevant evidence if its probative value is substantially outweighed by…unfair prejudice, confusing

the issues, misleading the jury, undue delay, wasting time, or needlessly presenting

cumulative evidence."

## II.      MOTIONS *IN LIMINE*

### 1.      Plaintiffs Should Be Precluded from Referencing or Offering Evidence Regarding ClearLight's Ownership of Katzkin or the Investment of Foreign Money into ClearLight or Katzkin Through Japanese Company Secom

Plaintiffs should be precluded from arguing, referencing or presenting evidence that

ClearLight owns Katzkin or that Japanese company Secom has invested money into

ClearLight, and, by extension, Katzkin.  Such evidence is irrelevant to any of the causes of

action that remain in this case, particularly in light of the Court's dismissal of the case as to

ClearLight in its August 13, 2020 Order: "Plaintiffs' claims against Defendants Clearlight

Partners, LLC and Clearlight Partners Management, LLC are DISMISSED."  Doc. 347.

In that same Order, the Court dismissed numerous of Plaintiffs' causes of action

against Katzkin, and as a result the only causes of action remaining in the case are Plaintiffs'

claims against Katzkin for allegedly interfering with Plaintiffs' employment relationship with

Ross Albert and allegedly inducing Ross Albert to breach his fiduciary duty to Plaintiffs.  *Id*.

The only remaining claims as to Albert are for his alleged breach of his fiduciary duty to

Plaintiffs and alleged violation of the Computer Fraud and Abuse Act.  Doc. 104.

That ClearLight owns Katzkin and has received investment from a Japanese company

is wholly irrelevant to these claims, which are limited to the conduct of Katzkin, Albert, and

Plaintiffs.  The corporate nationality of ClearLight's investor has no relevance to any claims

in this action, and should be excluded under Federal Rule of Evidence 401 and 402. That

ClearLight owns Katzkin or has received investment from foreign sources has no bearing on

whether Albert breached his duty to his employer, or whether Katzkin induced any such breach or interfered in Albert's relationship with Plaintiffs.

"It has long been held a 'universal rule' that comment or argument of counsel regarding the nationality of a party, when not an issue in the case, is improper." *Santangelo v. Bridgestone/Fire*, No. 2:01-cv-04210, 2010 WL 3617371 (C.D. Cal. July 19, 2010). Argument and evidence by Plaintiffs that Katzkin's owner has received investment from a foreign corporation is the "type of nationalistic rhetoric . . . calculated to play on the jury's passions and prejudices and should be excluded at trial pursuant to Federal Rule of Evidence 403." *Donnelly Corp. v. Gentex Corp.*, 918 F. Supp. 1126, 1136 (W.D. Mich. 1996) (excluding under Rule 403 evidence that defendant's products are "Made In America," image of American flag flying at defendant's factory, references to "un-American products" or products not "Made In America," and "similar types of references").

Indeed, Courts have long recognized that such rhetoric is properly excluded as it only serves to unduly prejudice the jury.  *See, e.g., Gearhart v. Uniden Corp. of Am.*, 781 F.2d 147, 153 (8th Cir. 1986) ("plaintiff's references in closing argument to defendant's foreign parent corporations were "improper" and "could prejudicially appeal to xenophobia and the current United States-Japanese trade imbalance"); *Sanford v. Ektelon/Prince Sports Group, Inc.*, No. 97-368, 1999 WL 33544436, *2-3 (D. Neb. Nov. 5, 1999) (precluding references to the defendant's foreign affiliates who had no involvement in designing product in product liability action); *London Guarantee & Accident Co v. Woelfle,* 83 F.2d 325, 340 (8th Cir. 1936) (holding that remarks regarding nationality of foreign corporations create "hostility" and "are condemned as an appeal to sectional or local prejudice"); *LeBlanc v. American*

*Honda Motor Co.,* 688 A.2d 556 (N.H. 1997) (reversing a verdict for the plaintiff due to prejudicial statements directed toward Honda's Japanese ownership by plaintiff's counsel); *Hong v. St. Louis,* 698 F.Supp. 180 (E.D.Mo.1988) (holding that repeated references to the plaintiff's involvement in the Chinese government prejudiced the jury).

For these precise reasons that the Court should preclude Plaintiffs from making any reference to, or providing any evidence of or argument about, the corporate ownership of Katzkin, and investment of a foreign corporation into the company that owns Katzkin, which would serve no purpose other than to unduly prejudice the jury against Katzkin.

   **2.     Plaintiffs Should Be Precluded from Offering Any Reference to Evidence of Discovery Disputes, Discovery Compliance, or Discovery Issues**

At numerous points in this litigation, Plaintiffs have wrongfully accused Defendants of withholding documents in discovery, interfering with the discovery process, and preventing Plaintiffs from deposing third party witnesses.  *See, e.g.,* Doc. 389.  Defendants have in fact fully complied with the discovery requirements.  Yet it is anticipated that Plaintiffs will continue to make such baseless accusations in front of the jury at trial in an attempt to paint Defendants as attempting to hide incriminating documents.  Plaintiffs should be excluded from making any such statements at trial which would be wholly without merit and would only serve to inflame the prejudices of the jury against Defendants.

By the time a case reaches trial, all discovery disputes have been resolved and discovery closed, including any disputes regarding Defendants' production of documents or the scheduling of depositions.  Accordingly, any reference to such disputes would have no probative value to Plaintiffs' claims against any Defendant.  Middle District Courts have recognized that such references or evidence should be excluded at trial:

Defendants' Motion regarding references to or arguments regarding alleged discovery misconduct or attorney misconduct, including any argument that Defendants allegedly blocked or prevented Plaintiff from inspecting any PERSOMASTER machine, that Defendants allegedly delayed or obstructed any discovery, or that Defendants withheld any discovery is **GRANTED** to the extent that evidence of discovery and attorney misconduct is excluded during the trial. The Honorable Monte C. Richardson, United States Magistrate Judge, resolved all discovery disputes and the Court does not intend on revisiting those issues during the trial and will certainly not revisit those issues in the jury's presence.

*Entrust Datacard Corp. v. Zeiser GmbH*, No. 3:17-CV-110-J-39MCR, 2019 WL 7472893, at

*5 (M.D. Fla. Oct. 29, 2019).  Similarly, in *Miller ex rel. Miller v. Ford Motor Co.*, No.

2:01CV545FTM-29DNF, 2004 WL 4054843, at *10–11 (M.D. Fla. July 22, 2004), the

defendant filed a motion *in limine* "to exclude reference or evidence to [defendant]'s alleged

misuse of discovery practices and a confidentiality order to 'hide' documents."  The Court

agreed, ordering that "plaintiff will be precluded from referring to the discovery procedures

in this case absent a prior order of the Court."  *Id.*[1]

Other courts in the Eleventh Circuit are in accord:

[T]he Court finds that it is highly unlikely that evidence concerning Defendants' alleged misconduct during discovery will be relevant to any of the issues to be decided in this case....

Even if the alleged misconduct were somehow relevant, Federal Rule of Evidence 403 allows a court to exclude evidence when "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury." Fed. R. Evid. 403. The evidence at issue is highly prejudicial to Defendants, has very little relevance, and is likely to confuse the jury and waste considerable

---

[1] *See also Eli Research, LLC v. Must Have Info Inc.*, No. 2:13-CV-695-FTM-38CM, 2015 WL 6501070, at *2 (M.D. Fla. Oct. 22, 2015) ("Neither Party may use the fact that a privilege was claimed or an objection was made to a particular piece of evidence that is being introduced at trial as such a statement could unduly prejudice the jury"); *Amegy Bank Nat. Ass'n v. DB Private Wealth Mortg., Ltd.*, No. 2:12-CV-243-FTM-38CM, 2014 WL 791505, at *3 (M.D. Fla. Feb. 24, 2014) ("Neither Party may use the fact that a privilege was claimed or an objection was made to a particular piece of evidence that is being introduced at trial as such a statement could unduly prejudice the jury. The motion to exclude any discovery objections is granted"); *Comprehensive Care Corp. v. Katzman*, No. 809-CV-1375-T-24TBM, 2010 WL 3565760, at *2 (M.D. Fla. Sept. 10, 2010) (granting defendant's motion to exclude all references to defendant's "method of collecting evidence during discovery.")

amounts of the Court's time. Under those circumstances, the Court excludes the evidence under Rule 403.

…[T]he Court directs Plaintiffs' counsel to refrain from arguing, implying, or inferring that Defendants or their counsel engaged in discovery misconduct or fraud, have bad characters, or violated the law. Similarly, the Court directs Plaintiffs' counsel to instruct Plaintiffs' witnesses to refrain from testifying to, or inferring, that Defendants or their counsel engaged in discovery misconduct or fraud, have bad characters, or violated the law.

*Fears v. Keystone Petroleum Transp., LLC*, No. 1:10-CV-02789-HLM, 2014 WL 11517819,

at *4 (N.D. Ga. Jan. 17, 2014).[2]

It is settled that such references to, or allegations of, discovery abuses or disputes have no place at trial as they are irrelevant to the merits of any parties' case and serve no legitimate purpose.  Accordingly, as in *Fears*, the Court should grant Defendants' motion and direct Plaintiffs, their counsel, and their witnesses, to refrain from such statements.

> **3.     Plaintiffs Should Be Precluded from Offering Statements or Evidence of Katzkin Paying Legal Fees for Albert or for any Other Person or Entity in Connection with this Litigation**

Plaintiffs' action stems from Ross Albert's decision to leave his employment with CST and work for Katzkin, and Plaintiffs allegations that, while still employed by CST, he diverted orders and caused other CST employees to leave their employment. After Albert was sued in this case, Katzkin, Albert's current employer, agreed to pay Albert's legal fees and costs in connection with this lawsuit.

Later, on December 27, 2018, Plaintiffs filed a First Amended Complaint that expanded the scope of this litigation to include a baseless antitrust claim, alleging that

---

[2] *See also AIM Recycling of Fla., LLC v. Metals USA, Inc.*, No. 18-CV-60292, 2020 WL 236719, at *3 (S.D. Fla. Jan. 15, 2020) (holding that "any references to discovery disputes between the parties in this case shall be excluded.")

Katzkin was engaged in a nationwide violation of the Sherman Act.  *See* Doc. 35.  Plaintiffs

then used that frivolous antitrust claim to justify an extensive campaign of onerous third-

party discovery from Katzkin's current customers in an attempt to punish those that chose to

do business with Katzkin.  In order to maintain a good business relationship with these

customers—many of which are small businesses, making the legal fees particularly

burdensome—and to minimize the economic burden these third parties faced in responding

to Plaintiffs' overbroad and retributive discovery demands, Katzkin offered to reimburse

these customers for their attorneys' fees incurred in doing so.  Some customers accepted this

offer, others did not.

Defendants anticipate that Plaintiffs will attempt to introduce evidence relating to

Katzkin's payment of such legal fees or otherwise make remarks during trial about the source

of payment of those legal fees. Any such attempt should be precluded under Federal Rule of

Evidence 402 as the payment of such legal fees is irrelevant to the issues in this action,

namely whether Albert breached any duty to Plaintiffs or whether Katzkin induced him to do

so.  Indeed, these circumstances are also temporally remote.  The Court's Order limits the

claims to be tried to Albert's alleged breach of a duty of loyalty *during* his employment—

which concluded in March 2016. In contrast, Katzkin did not undertake to pay Albert's legal

fees—because he had none—until Plaintiff sued him a year and a half later in August 2017.

To the extent there is any relevance to the testimony, which there is not, it should be

excluded under Federal Rule of Evidence 403.

*Partylite Gifts, Inc. v. MacMillan* is directly on point.  In *Partylite*, defendant was an

independent contractor working for plaintiff who quit to work as a salesperson for a different

employer.  *Partylite*, No. 8:10-CV-1490-T-27EAJ, 2012 WL 13059665, at *1 (M.D. Fla.

Sept. 13, 2012).  Plaintiff alleged that defendant had improperly solicited other contractors to

cease working for plaintiff and had misappropriated plaintiff's trade secrets.  *Id*.  Defendant

brought a motion *in limine* to exclude plaintiff from making any reference or offering any

evidence that defendant's legal fees were being paid by her new employer, Jewels by Park

Lane.  *Id*. at *1-2.  The Middle District Court granted that motion, finding that such evidence

was both irrelevant and unduly prejudicial:

> The Court agrees that evidence relating to the source of payment of MacMillan's legal
> fees and costs is not relevant to whether MacMillan is liable for the conduct
> complained of by PartLite. *See* Fed. R. Civ. P. 401, 402. In the alternative, even if the
> source of payment of MacMillan's legal fees and costs had some limited probative
> value on the issue of liability (*i.e.*, intent and knowledge), any such probative value is
> substantially outweighed by the unfair prejudice MacMillan would faced if such
> evidence was admitted at trial. See Fed. R. Civ. P. 403.

*Id*. at *2.

The same result should follow here.  Katzkin's subsequent agreement to pay the legal

fees of its employee Albert or any other entity is not relevant to the question of whether

Albert previously breached a duty to Plaintiffs or whether Katzkin induced him to do so.

Similarly, Katzkin anticipates that Plaintiffs will want to reference Katzkin's payment

of certain of its customers' legal fees to suggest that Katzkin was paying those third parties to

withhold documents in discovery.  As set out in Section II. 2., above, such discovery disputes

are themselves irrelevant to any issues or claims to be put before the jury, and accordingly

any evidence of Katzkin's payment of those legal fees in connection with third-party

discovery should be excluded at trial for those same reasons.

Katzkin thus respectfully requests that the Court prohibit Plaintiffs, their counsel, and their witnesses from making any reference to Katzkin's payment of anyone else's legal fees in this litigation, or from offering any evidence or argument of the same at trial.

### 4. Plaintiffs Should Be Precluded from Making Any Reference to or Evidence of Interference with Customer Relationships or Customers

As set forth above, the only causes of action remaining in the case are Plaintiffs' claims against Katzkin for interference with Plaintiffs' employment relationship with Albert and inducing a breach of fiduciary duty by defendant Albert, and Plaintiffs' claims against Albert for breach of fiduciary duty and alleged violation of the Computer Fraud and Abuse Act. Doc. 347. Plaintiffs and their witnesses should be precluded at trial from making any statements or offering evidence relating to causes of action or theories of liability beyond those four causes of action that remain in the case following the Court's August 13, 2020 Order on Katzkin and ClearLight's motions to dismiss Plaintiffs' Second Amended Complaint. *Id.*

Specifically, Defendants anticipate that Plaintiffs will attempt to make comments about or offer argument or evidence as to an alleged "conspiracy" and that Katzkin and/or Albert interfered with Plaintiffs' relationships with their customers after Albert resigned from CST and began working at Katzkin. The Court has dismissed the alleged conspiracy claims and has expressly ruled that customer interference claims are not part of this case:

> Plaintiffs contend that they are also alleging improper interference with their customer relationships. However, unlike Plaintiffs' First Amended Complaint, which claimed tortious interference with Plaintiffs' customers, (*see* Doc. 35, ¶¶ 87–95), the SAC asserts a tortious interference claim only related to Mr. Albert, (*see* Doc. 104, ¶¶ 150, 155, 158). Thus, Plaintiffs have failed to provide Katzkin with fair notice of their claims to the extent that they attempt to assert interference with their customer relationships or, alternatively, have failed to adequately plead such a claim.

*Id.* at 21, n.2.

Plaintiffs made no motion challenging this Order, which would not have been meritorious in any event, but also the June 28, 2019 deadline for Plaintiffs to do so pursuant to the operative Case Management Order (Doc. 80) has long since passed. Pursuant to the Second Amended Case Management Order, June 28, 2019 was the deadline for the parties to file any "motions to add parties or to amend pleadings." Doc. 80 at 1. Further, the Court's July 17, 2020 Order modifying certain case deadlines makes clear that "The deadline for 'all other motions,' … will remain November 1, 2020."[3] Doc. 327 at 2. As of the time of filing of these motions *in limine*, Plaintiffs have brought no such motion with the Court seeking to amend their pleadings or challenging the Court's August 13 Order, and therefore for all these reasons are now foreclosed from bringing such a motion. Argument and evidence concerning causes of action not before the Court or the jury is, by definition, irrelevant under Rule 402.

*Long v. Phillips & Brooks/Gladwin, Inc.* is directly on point. Defendant in *Long*, a product liability action, filed a motion *in limine* to exclude all evidence and argument "relating to legal theories or claims" that had already been decided by summary judgment or were not alleged against the moving defendant. *Long v. Phillips & Brooks/Gladwin, Inc.*, No. 1:02-CV-1235-CC, 2006 WL 8431254, at *1–2 (N.D. Ga. Aug. 29, 2006). Specifically, defendant sought to preclude plaintiff from arguing that it was the seller or installer of the subject product as the only claims asserted against defendant pertained only to defendant as

---

[3] As November 1, 2020 falls on a Sunday, pursuant to Fed. R. Civ. P 6(a)(2)(C), that deadline is pushed to November 2, as that is the "next day that is not a Saturday, Sunday, or legal holiday."

the entity that serviced and maintained the product.  *Id*. at *2.  The Court granted that motion,

holding that plaintiff could not advance claims against defendant that did not appear in the

complaint:

> Plaintiffs are precluded from presenting evidence regarding Defendant as a seller or
> the entity that passed title to Mr. Long's employer and delivered the press brake to the
> location where Mr. Long was injured, as this Court has expressly ruled that the claims
> alleged against Defendant pertain only to the Defendant as the entity that serviced and
> maintained the subject press brake. The Complaint contains no allegations concerning
> this Defendant as the entity that sold the subject press brake to PBG, and Plaintiffs
> did not timely move to amend the Complaint to add such claims or allegations.
> Evidence that Defendant is the successor to the seller/installer of the subject press
> brake is therefore irrelevant to the claims remaining in the action and, as such, is due
> to be excluded.

*Id*.

Other courts are in accord that such evidence and argument is properly excluded.

*See, e.g. Wu v. Thomas*, 996 F.2d 271, 275 (11th Cir. 1993) (affirming trial court's exclusion

of evidence relating to claims not asserted in the operative complaint, finding such evidence

was "irrelevant to anything pled in the complaint and was therefore properly excluded");

*Marks v. Salvatore Lanzilotti*, 230 F.3d 1367 (9th Cir. 2000) (affirming the trial court's

granting of defendants' motion *in limine* to preclude plaintiffs from arguing at trial that he

suffered from a mental disability where plaintiff's "complaint listed a number of physical

ailments, but never alluded to a possible mental impairment.")

As this Court has already found that Plaintiffs have not raised any claim of customer

interference against Katzkin in the operative Second Amended Complaint, Plaintiffs should

be prohibited from commenting on or offering any argument or evidence regarding such

alleged customer interference at trial, or any other claim not currently a part of the operative

pleading.

**5.    To Preclude Any Reference to or Use of the Alleged and Illegal Recording of Ross Albert's March 18, 2016 Telephone Call or Any Testimony Concerning the Intercepted Phone Call**

As detailed in Albert's "Albert's Motion to Dismiss, to Revoke Pro Hac Vice Admission, and Strike Deposition/Evidence," (Doc. 316),[4] Plaintiffs and their counsel have deliberately violated Florida criminal statute §934.03, prohibiting the interception, recording and use of Albert's private telephone call by: a) illegally intercepting that phone call; b) illegally recording that call; and c) illegally using and disclosing the contents of that illegal interception and recording.  Further, Albert has shown that Plaintiffs/their counsel repeatedly failed to disclose the recording and further obstructed Albert's discovery of such facts by withholding the recording, failing to identify it in response to discovery, and asserting attorney-client privilege with respect to this blatantly criminal behavior.

Florida Statutes, Section 934.01 *et seq.* is known as "the Florida Security of Communications Act" ("FSCA"). The FSCA makes it a crime to intentionally intercept a person's electronic communications, including a telephone call, without prior consent of <u>all</u> parties to the communication.  In addition to serious criminal penalties and other civil remedies, the FSCA precludes consideration of the contents of the communication recorded and any evidence derived from it:

> *Prohibition of use as evidence of intercepted wire or oral communications.*
>
> Whenever any wire or oral communication has been intercepted, no part of the contents of such communication and no evidence derived therefrom may be received in evidence in any trial, hearing, or other proceeding in or before any court, grand jury, department, officer, agency, regulatory body, legislative committee, or other authority of the state, or a political subdivision thereof, if the disclosure of that

---

[4] Albert's Motion to Dismiss, etc. (Doc. 316) is incorporated by reference and includes greater factual detail and case law which will not be repeated in its entirety in this motion.

> information would be in violation of this chapter. The prohibition of use as evidence
> provided in this section does not apply in cases of prosecution for criminal
> interception in violation of the provisions of this chapter.

Fla. Stat. Ann. § 934.06 (West).

### A.   The FSCA is an Expression of Florida *Substantive* Law Which Must Be Applied to Plaintiff's Florida State Law Tort Claims.

In response to Albert's Motion, Plaintiffs' argue that the FSCA is a procedural rule and not substantive law of Florida, and thus inapplicable to this diversity case.[5]  Doc. 329 at 5-6.  However, Plaintiffs cite exclusively to federal question cases and criminal cases (necessarily federal questions) that do not even address the critical procedural/substantive distinction.  *Id.*  In diversity cases, laws identical to the FSCA have been consistently held to be *substantive* laws primarily intended to protect extra-judicial rights of privacy rather than procedural rules of evidence primarily intended only to govern in-court proceedings. *Feldman v. Allstate Ins. Co.*, 322 F.3d 660, 667 (9th Cir. 2003); *Glinski v. City of Chicago*, No. 99 C 3063, 2002 WL 113884, at *7 (N.D. Ill. Jan. 29, 2002).

In *Feldman*, the Ninth Circuit held that a California criminal statute, very similar to the FCSA, protected substantive rights of California citizens and thus applied to exclude the fruit of such crimes in a federal diversity action:

> We hold that California Penal Code § 632, like the Nevada law at issue in *Wray,* is an
> exception to the general rule that the Federal Rules govern the admissibility of
> evidence in diversity cases. California Penal Code § 632 both makes taping a

---

[5] Albert removed this case based upon diversity of citizenship and while Plaintiffs subsequently attempted to assert federal antitrust claims, those claims have been dismissed with prejudice.  Thus, only Plaintiffs basis for federal question jurisdiction is Plaintiffs' purported Computer Fraud & Abuse Act claim against Albert.  As set forth in Albert's pending motion for summary judgment, the Court's prior ruling dismissing the very same claim against Katzkin dooms the same CFAA claim against Albert.  In any event, the intercepted phone call and recording have no conceivable relevance to any CFAA claim and thus could not be admissible with respect to that federal claim regardless of the FSCA.

confidential conversation a crime and limits the admissibility of illegally intercepted conversations. CAL. PENAL CODE § 632(a), (d). The statute thereby embodies a state substantive interest in the privacy of California citizens from exposure of their confidential conversations to third parties. We also note that the California Constitution expressly guarantees a right to privacy,[6] and that "having one's personal conversations secretly recorded [and replayed] may well infringe upon the right to privacy guaranteed by the California Constitution." *Rattray v. City of National City,* 51 F.3d 793, 797 (9th Cir.1994). For these reasons, we hold that Penal Code § 632 is an integral component of California's substantive state policy of protecting the privacy of its citizens, and is properly characterized as substantive law within the meaning of *Erie.*

*Feldman v. Allstate*, 322 F.3d at 667.

Similarly, in *Glinski v. Chicago,* the trial court held that the Illinois Eavesdropping Act provision barring admission of illegally obtained evidence of private conversations applied in a federal diversity case because the Illinois law against eavesdropping is a *substantive* law governing conduct unrelated to litigation and not a procedural rule governing the conduct of in-court proceedings.  *Glinski v. Chicago,* 2002 WL 113884, at *7 ("[T]he Illinois exclusionary rule is 'concerned with the channeling of behavior outside the courtroom,' not solely with accuracy and economy in the litigation. Therefore, the court holds that the rule is a substantive rule, and must be applied to the state-law claims in this case.") quoting *Barron v. Ford Motor Co. of Can. Ltd.*, 965 F.2d 195, 199 (7th Cir.1992).

"A pure rule of evidence, like a pure rule of procedure, is concerned solely with accuracy and economy in litigation and should therefore be tailored to the capacities and circumstances of the particular judicial system, here the federal one; while a substantive rule is concerned with the channeling of behavior outside the courtroom, and where as in this case the behavior in question is regulated by state law rather than by federal law, state law should govern even if the case happens to be in federal court."

*Barron*, 965 F.2d at 199.

---

[6]  Florida's constitution similarly provides Florida citizens a right of privacy.

There is no question that the FSCA a substantive law primarily aimed at "channeling of behavior outside the courtroom."  The Florida Supreme Court has repeatedly held that the FSCA represents a Florida public policy decision protecting the privacy rights of Florida citizens.  *State v. Tsavaris*, 394 So. 2d 418, 422 (Fla. 1981).  Further, *Tsavaris* expressly held that the FSCA differs from the federal, substantive wiretap law by embodying "a greater concern for the protection of one's privacy interests in a conversation."

> This amendment "was a policy decision by the Florida legislature to allow each party to a conversation to have an expectation of privacy from interception by another party to the conversation." *Shevin v. Sunbeam Television Corp.*, 351 So.2d at 726-27. Accord, *State v. News-Press Publishing Co.*, 338 So.2d 1313, 1316 (Fla. 2d DCA 1976). While the federal wiretapping legislation envisions that one's right to privacy must be subordinate to law enforcement interests when one party consents to the interception of a conversation, "(t)he (Florida) Legislature has determined as a matter of state public policy that the right of any caller to the privacy of his conversation is of greater societal value than the interest served by permitting eavesdropping or wiretapping." *State v. Walls*, 356 So.2d at 296 (quoting from *Markham v. Markham*, 265 So.2d 59 (Fla. 1st DCA 1972), affirmed, 272 So.2d 813 (1973)). Hence, the Florida act evinces a greater concern for the protection of one's privacy interests in a conversation than does the federal act.

*State v. Tsavaris*, 394 So. 2d at 422.  The Eleventh Circuit has similarly acknowledged that the FSCA embodies a *substantively* broader protection of privacy rights than its federal, substantive counterpart.  *Royal Health Care Servs., Inc. v. Jefferson-Pilot Life Ins. Co.*, 924 F.2d 215, 218–19 (11th Cir. 1991)("We agree that *Tsavaris* says that the Florida statute 'evinces a greater concern for the protection of one's privacy interests in a conversation than does the [Federal Wiretap Act],'") quoting *Tsavaris,* 394 So.2d at 422.  Thus, the substantive FSCA must be applied to Plaintiffs' diversity claims in this Court.

/ / /

/ / /

**B.      Even if Exclusion Were Not Mandated by the FSCA, the Court Should Exercise its Discretion to Exclude the Illegally Obtained Evidence.**

Further, even if the FSCA were not a substantive law, directly applicable in this diversity action, the Court should exercise its discretion to exclude the illegally intercepted phone call and recording.  Indeed, the federal question cases cited by Plaintiffs merely hold that the trial court has the discretion to admit *or exclude* illegally obtained evidence.  *Borden, Inc. v. Fla. E. Coast Ry. Co.*, 772 F.2d 750, 754 (11th Cir. 1985) ("Although this is a diversity of citizenship case in which Florida law provides the substantive law, the admissibility of evidence in federal courts is governed by federal law. ... A trial judge has broad discretion over the admission of evidence.").  Plaintiffs' primarily rely on *Park v. El Paso Board of Realtors,*[7] but that Fifth Circuit case merely held that the trial court should exercise its discretion in determining whether to exclude a tape recording made in violation of "a local telephone tariff."

> Where evidence is obtained in violation, at most, of a local telephone tariff, the public interest in deterrence does not outweigh the benefit of providing the factfinder with all of the relevant testimony.

Yet even after finding no public interest strong enough to *compel* exclusion of the tape recording, *Park v. El Paso Board of Realtors* expressly held the trial court still had discretion to exclude such evidence:

> In both *Cataphote Corp. v. Hudson,* 422 F.2d 1290 (5th Cir. 1970), and *Trans-Cold Express v. Arrow Motor Transit,* 440 F.2d 1216 (7th Cir. 1971), the courts merely upheld the exclusion of deceptively obtained evidence as being within the trial court's discretion. [pinpoint citations omitted].

---

[7] Plaintiffs incorrectly assert that *Park v. El Paso Board of Realtors* is "controlling."  In fact, it was decided four years *after* formation of the Eleventh Circuit.  The Eleventh Circuit, in the *en banc* decision *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent only decisions of the former Fifth Circuit *prior* to October 1, 1981.

> Indeed, to the extent that these cases stand for the proposition that the admission of
> deceptively obtained evidence is within the sound discretion of the trial court, they
> support the view that the court below was entitled to admit the disputed tape
> recordings. On remand, we leave the admissibility of the tape recorded conversations
> to the sound discretion of the trial court.

*Park v. El Paso Board of Realtors*, 764 F.2d at 1066.  As noted above, in a prior Fifth Circuit

case, which *is* controlling authority, the Fifth Circuit *upheld* the exclusion of improperly

obtained evidence. *Cataphote Corp. v. Hudson*, 422 F.2d 1290, 1296 (5th Cir. 1970)

(Godbold, J.).

The Court should exercise its discretion to exclude evidence of the illegal interception

and recording in this case because the FSCA's continuing prohibition of any further

disclosure renders it unlawful under state law to proceed with litigation that includes the

illegal evidence.  The FSCA not only prohibits the initial interception and recording of

Albert's telephone conversation by CST/Forrister, but also prohibits the subsequent ***use or***

***disclosure*** of such recordings by CST's counsel.  As the Eleventh Circuit held in *Woliner v.*

*Summers:*

> Florida's unlawful-recording act generally prohibits, among other things, the
> recording of "oral communication[s]" without the consent of all participants to the
> conversation. *See* Fla. Stat. § 934.03(1)(a)–(b). It also prohibits the use or disclosure
> of a recorded oral communication if the individual using or disclosing the recording
> knew or had reason to know that the recording was unlawful. *See* Fla. Stat. §
> 934.03(1)(c)–(d).

796 F. App'x 649, 651 (11th Cir. 2019).  Woliner alleged that during a license-revocation

hearing, both the individual defendant and the Department of Health officials prosecuting the

license revocation proceedings unlawfully disclosed or used a preexisting and unlawful

recording *in that hearing*.  *Woliner*, 796 F. App'x at 652.  Thus, the Eleventh Circuit held that

the physician had established a prima facie violation of the FSCA in <u>both</u> the original

recording of the conversation and in the separate, subsequent use of that recording at the

administrative hearing.  As the Eleventh Circuit confirmed in *Woliner*, Albert has a

substantive right not to have his private telephone call published and re-published in

subsequent litigation or otherwise.  Thus, this Court should exercise its discretion to exclude

evidence of the illegal interception and recording.

        **C.**       **The Failure to Disclose the Illegal Recording Requires Exclusion.**

Apart from the illegality of creating the unlawful recording and then using it in this

litigation, Plaintiffs also deliberately failed and refused to disclose the existence of the illegal

recording in response to discovery.  As more fully detailed in Albert's pending Motion,

almost 2 ½ years ago, Plaintiffs original counsel new the recording was illegal and could not

be used or disclosed without further violating FSCA.  Yet they failed to specifically disclose

its existence:

> ***CST states that it is in possession of communications with Albert which cannot be
> produced absent a court order.***

CST's counsel at the time, Baker & Hostetler, was aware of the recording; was aware it was

directly responsive to Albert's discovery request; was aware it was illegal; was aware that

further use or disclosure would thus constitute an additional crime; and apparently relied on

the prohibitions of the FSCA on further 'use or disclosure' to withhold this evidence of

CST's crime. Indeed, despite several discovery requests that would have required disclosure

and production of the recording CST's counsel consistently and repeatedly failed to disclose

it (or to claim it as somehow privileged.)  Yet, on the day before discovery was set to close

on June 24, 2020, Plaintiffs' new and current lead counsel, Mr. Mahaffey, repudiated Baker

& Hostetler's longstanding position and Mr. Mahaffey began using and disclosing the illegal

and previously withheld recording in deposition and in publicly filed court papers.  Yet

Plaintiff offer no justification whatsoever for failing to even identify this discoverable

evidence for years and then publicly disclosing it, in violation of a criminal law, when it suits

their purpose.  Accordingly, the intercepted phone call and recording should be excluded for

these additional reasons.  *See* Fed. R. Civ. P. 37(d) expressly incorporating Fed. R. Civ. P.

37(b)(2)(A)(ii) ("prohibiting the disobedient party from supporting or opposing designated

claims or defenses, or from introducing designated matters in evidence").

6.       **To Preclude Any Reference to or Use of the Testimony or Statements of Valencia and Soto Subsequent to the Time They Were Offered Inducements to Testify Favorably to Plaintiffs, Including Any Valencia and Soto Affidavits**

As detailed in Albert's "Second Motion to Disqualify"[8] there is unrefuted evidence

that Plaintiffs/their counsel made an express written proposal to Albert for " ... dismissal of

Ross Albert in exchange for him testifying truthfully about the extensive involvement with

Katzkin he engaged in to destroy the Orlando branch operations ... ."  Doc. 373, Ex. G.

Further, it is almost equally apparent they engaged in the same unethical conduct with

respect to former parties/fact witnesses Daniel Valencia and Naomi Soto and successfully

induced those witnesses to change their testimony and provide secret affidavits to

Plaintiffs/their counsel.  In response, Plaintiff's counsel do not even deny that this occurred.

Doc. 385 at 2.  Plaintiffs' current lead counsel, Mr. Mahaffey, simply disclaims any

---

[8] Albert's Second Motion to Disqualify (Doc. 373) is incorporated by reference and includes greater factual detail and case law which will not be repeated herein.

knowledge while his predecessors and current co-counsel remain remarkably and conspicuously mute in the face of such serious allegation, and both counsel obstructed discovery into such allegations.

Florida ethical rules, expressly incorporated into this Court's Local Rules,[9] absolutely and unequivocally prohibit offering any inducement to a fact witness to give favorable testimony.  R. Regulating Fla. Bar 4–3.4(b); see generally *The Florida Bar v. Wohl*, 842 So.2d 811 (2003).  And, offering to "settle" pending litigation is no more proper than any other form of inducement.  *Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 18, 2006) (rejecting attempt to distinguish *Golden Door* in the case of a settlement payment because " whether the money is paid incident to a settlement agreement, or simply to assure witness cooperation, the effect is the same: the witness has an incentive to testify favorably for the party paying him.")

When witnesses have been offered an impermissible inducement to testify, the exclusion of the tainted witnesses' testimony is both "proper and appropriate."  *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1526–27 (S.D. Fla. 1994), *aff'd in relevant part,* 117 F.3d 1328 (11th Cir. 1997):

> The Court finds that the exclusion of all evidence tainted by the ethical violations is proper and appropriate. Accordingly, Lloyds SHALL not be permitted to submit into the evidence in this civil action the testimony given in this action by any of the fact witnesses who received monetary compensation from Lloyds.

---

[9] Lawyers practicing before this Court agree to be bound by the Florida Bar's professionalism rules. Local Rule 2.04(d).

865 F. Supp. 1516, 1526–27.  Further, the Eleventh Circuit expressly affirmed the exclusion

of these tainted witnesses as an appropriate sanction for offering inducements to the

witnesses:

> Moreover, we find that the sanction imposed—barring Lloyds from using the
> testimony of paid witnesses—adequately penalized Lloyds for violating Rule 4–
> 3.4(b) of the Rules of Professional Conduct and did not constitute an abuse of the
> district court's discretion.

*Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 117 F.3d

1328, 1335 (11th Cir. 1997).  Accordingly, in addition to other sanctions and remedies, the

testimony of Valencia and Soto must be excluded at least from the point where they were

offered an inducement—dismissal of the litigation against Valencia—for favorable

testimony.

## III.    CONCLUSION

For the reasons set forth above, Katzkin and Albert respectfully request that the Court

grant these motions *in limine* and preclude Plaintiffs and their witnesses from making any

reference to the irrelevant and prejudicial subjects set forth above.

## <u>CERTIFICATE OF COUNSEL</u>

Pursuant to M.D. Fla. L.R. 3.01(g), counsel for Katzkin met and conferred with

counsel for Plaintiffs via telephone prior to filing these motions *in limine* to determine

whether Plaintiffs would agree any of the relief requested herein.  During that meet and

confer, Plaintiffs' counsel indicated that Plaintiffs would not agree to any of the relief

requested in these motions.

/ / /

/ / /

Dated this 2nd day of November, 2020.                    Respectfully submitted,


*s/ Don Howarth*                                         *s/ Courtney B. Wilson*
Don Howarth, Esq. (*Pro Hac Vice*)                       Courtney B Wilson, Esq.
Suzelle M. Smith, Esq. (*Pro Hac Vice*)                  Lindsay Alter, Esq.
Tomas S. Glaspy, Esq. (*Pro Hac Vice*)                   Email: CWilson@littler.com
Email: dhowarth@howarth-smith.com                        Email: LAlter@littler.com
Email: ssmith@howarth-smith.com                          LITTLER MENDELSON, P.C.
Email: tglaspy@howarth-smith.com                         Wells Fargo Center
HOWARTH & SMITH                                          333 SE 2nd Ave., Ste. 2700
523 W. 6th St., Suite 728                                Miami, FL 33131
Los Angeles, CA 90014                                    Telephone: 305-400-7500
Telephone: (213) 955-9400                                Facsimile: 305-603-2552
Facsimile: 213/622-0791

*Attorneys for Katzkin Leather, Inc.*                    *Attorneys for Ross Albert and co-counsel*
                                                         *for Katzkin Leather, Inc.*

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on this 2nd day of November, 2020, I filed a true and correct copy of the foregoing document with the Clerk of the Court via the CM/ECF Portal, and that the same was served on all counsel of record or pro se identified on the Service List via the CM/ECF Portal.

*/s/  Don Howarth*
Don Howarth, Esq.

## SERVICE LIST

***ATTORNEYS FOR PLAINTIFFS,***
***CLASSIC SOFT TRIM, INC. and***
***ROADWIRE, LLC***

Kevin W. Shaughnessy, Esq.
Florida Bar No.: 473448
E-Mail: kshaughnessy@bakerlaw.com
Secondary: jnenstiel@bakerlaw.com
P. Alexander Quimby, Esq.
Florida Bar No. 099954
E-mail: aquimby@bakerlaw.com
BAKER & HOSTETLER, LLP
2300 SunTrust Center
200 South Orange Avenue
P.O. Box 112
Orlando, FL 32802
Telephone: (407) 649-4000
Facsimile:  (407) 841-0168

Douglas L. Mahaffey, Esq. *(Pro Hac Vice)*
E-Mail: dougm@mahaffeylaw.com
Secondary: janelle@mahaffeylaw.com
MAHAFFEY LAW GROUP, PC
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660
Telephone: (949) 833-1400
Facsimile:  (949) 263-8736

***ATTORNEYS FOR DEFENDANTS,***
***ROSS ALBERT and KATZKIN***
***LEATHER, INC.***

Courtney B. Wilson, Esq.
Florida Bar No. 614580
E-Mail: cwilson@littler.com
Secondary: kljackson@littler.com
Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-Mail: lalter@littler.com
Secondary: btapia@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone:  (305) 400-7500
Facsimile:   (305) 603-2552

***ATTORNEYS FOR DEFENDANT,***
***KATZKIN LEATHER, INC.***

Don Howarth, Esq. *(Pro Hac Vice)*
E-Mail:  dhowarth@howarth-smith.com
Secondary: cdouesnard@howarth-smith.com
Suzelle M. Smith, Esq. *(Pro Hac Vice)*
E-Mail: ssmith@howarth-smith.com
Secondary: agilbert@howarth-smith.com
Padraic J. Glaspy, Esq. *(Pro Hac Vice)*
E-mail: pglaspy@howarth-smith.com
Tomas S. Glaspy, Esq. *(Pro Hac Vice)*
E-Mail: tglaspy@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, CA 90014
Telephone:  (213) 955-9400
Facsimile:   (213) 622-0791

25