UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO. 6:18-cv-01237-WWB-GJK

CLASSIC SOFT TRIM, INC.,
and ROADWIRE, LLC,

    Plaintiffs,

v.

ROSS ALBERT, and
KATZKIN LEATHER, INC.,

    Defendants.
_____/

**DEFENDANT, ALBERT'S APPEAL OF**
**<u>MAGISTRATE JUDGE'S RULING (Doc. 423)</u>**
*(RE: Motion, Doc. 373)*

Defendant, Ross Albert, pursuant to Fed. R. Civ. P. 72(a), and 28 U.S.C. § 636(b)(1), submits this appeal of Magistrate Judge Kelly's Order of January 14, 2021 (Doc. 423) ("Order") denying Albert's "Defendant, Ross Albert's Second Motion To Disqualify Counsel/Revoke Pro Hac Vice Admission, And For Order To Show Cause Re: Offering Improper Inducements To Fact Witnesses" (Doc. 373). The Order erroneously concludes that a written offer to dismiss protracted litigation in exchange for giving favorable testimony, is not an "offer of inducement" prohibited by Rule 4-3.4 of the Rules Regulating the Florida Bar, and incorporated into this Court's own Rules.

1

I. **The Order's Interpretation and Application of Rule 4-3.4 is Contrary to Law and Clearly Erroneous.**

The question presented is whether Plaintiffs' counsel made an improper attempt to induce a fact witness, Albert, to give or alter his testimony in exchange for a dismissal of the claims against him, in violation of the Rule 4-3.4 of the Rules Regulating the Florida Bar. Florida ethical rules, expressly incorporated into this Court's Local Rules[1], absolutely and unequivocally prohibit offering *any* "inducement" to a fact witness to give favorable testimony:

> A lawyer shall not:
> ....
> (b) fabricate evidence, counsel or assist a witness to testify falsely, or *offer an inducement to a witness,* except a lawyer may pay a witness reasonable expenses incurred by the witness in attending or testifying at proceedings; a reasonable, noncontingent fee for professional services of an expert witness; and reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings.

R. Regulating Fla. Bar 4–3.4(b); see generally *The Florida Bar v. Wohl*, 842 So.2d 811 (2003). Thus, the Order correctly concluded that a violation of this Rule would be grounds for disqualification and that courts applying this Rule have repeatedly emphasized the "extremely serious" nature of such misconduct. Order, pp. 5-6 citing *United States ex rel. S. Site & Underground, Inc. v. McCarthy Improvement Co.*, 2017 WL 443486, at *20 (M.D. Fla. Feb. 1, 2017):

> "Offering financial inducements to a fact witness is extremely serious misconduct" and is "an evil that should be avoided." *Fla. Bar v. Wohl*, 842 So.2d 811, 816 (Fla. 2003).

---

[1] Lawyers practicing before this Court agree to be bound by the Florida Bar's professionalism rules. Local Rule 2.04(d).

> The Florida Supreme Court has explained, "The very heart of the judicial system lies in the integrity of the participants. Justice must not be bought or sold." *Fla. Bar v. Jackson*, 490 So.2d 935, 936 (Fla. 1986) (internal modifications omitted).
>
> \* \* \*
>
> Any payment is inappropriate if it is contingent on the content of the witness's testimony or its helpfulness to the case. See *Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non–Marine Ass'n*, 865 F. Supp. 1516, 1524–26 (S.D. Fla. 1994), aff'd in relevant part, 117 F.3d 1328, 1335 n.2 (11th Cir. 1997) (imposing sanctions where payments of $493,103 and $147,000 to two witnesses were contingent on testimony being truthful, material, and helpful to defense); *Ward v. Nierlich*, 99–14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 20, 2006) (unpublished) (imposing sanctions where plaintiff's counsel promised lump-sum payment and stake in settlement agreement for testimony).

*United States v. McCarthy*, 2017 WL 443486, at *20.

> [T]he very heart of the judicial system lies in the integrity of the participants.... Justice must not be bought or sold. Attorneys have a solemn responsibility to assure that not even the taint of impropriety exists as to the procurement of testimony before courts of justice. It is clear that the actions of the respondent ... violates [sic] the very essence of the integrity of the judicial system and ... the oath of his office.

*The Florida Bar v. Wohl*, 842 So.2d 815 quoting *Florida Bar v. Jackson,* 490 So.2d 935 (Fla.1986).  "Fair competition in the adversary system is secured by prohibitions against ... improperly influencing witnesses ... and the like." *Trial Practices, Inc. v. Hahn Loeser & Parks, LLP*, 260 So.3d 167, 171 (2018) quoting R. Regulating Fla. Bar 4-3.4 cmt.

Nevertheless, in ruling that Plaintiffs' counsel had not violated this Rule and so should not be disqualified, nor even subject to a show cause Order, the Magistrate Judge concluded: 1) a mere argument, without proof, of attempting to induce "truthful" testimony is

3

somehow exculpatory; 2) Plaintiffs' counsel's written, proposed exchange was not an "offer"; and 3) proposing to dismiss onerous litigation that has already commenced and continued for years is not a prohibited "inducement." Each of these propositions is clearly erroneous, contrary to the plain language of the Rule and interpretive law, and unsupported by any authority.

## II.     Standard of Review

The Magistrate Judge's order on ***non***-dispositive motions is entitled to some measure of deference by the Court, and may only be overturned if it is "clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). However, the Order here is based upon erroneous conclusions of law, its interpretation of Rule 4-3.4 in light of undisputed facts. Thus, the standard of review is effectively *de novo* regardless of the nature of the Order. See, *Showan v. Pressdee*, 922 F.3d 1211, 1223 (11th Cir. 2019)("We review *de novo* a district court's determination and application of state law in a diversity case") quoting *Pendergast v. Sprint Nextel Corp.*, 592 F.3d 1119, 1132 n.11 (11th Cir. 2010).

## III.    The Order's Supposition That Plaintiffs Sought to Induce Only "Truthful" Testimony is Factually Unsupported and Legally Immaterial.

Though not reaching any express conclusion, the Order begins and then repeatedly references Plaintiffs' unsupported allegations that Albert has lied and thus Plaintiffs' alleged *motive* in attempting to induce altered testimony was to induce "truthful" testimony.[2] First, Albert has at all times offered the full and complete truth in his testimony

---

[2] It should first be noted, by Plaintiffs' counsel's own words the proposed exchange was not limited to "truthful" testimony unless that version of the "truth" included "testifying truthfully about the extensive involvement with Katzkin he engaged in to destroy the Orlando branch operations, ... ."

in this litigation, and there is no evidence to the contrary.³ Indeed, even in his Opposition to Albert's Motion, Plaintiffs' counsel conceded he had not yet even attempted to put any such evidence before the Court. Doc. 385, p. 4. ("In due course, the mountain of proof of what Albert has lied about and concealed, and its prejudice to Plaintiffs' trial preparation, will be presented.") Yet, despite the complete absence of any evidence of the alleged "perjury," and Plaintiffs' admission they have not proffered any, the Order repeatedly references these admittedly unsubstantiated assertions by Plaintiffs' counsel as if they should have some bearing on the outcome of Albert's motion. Of course, statements by counsel are no evidence at all, and the Magistrate Judge has not attempted to determine *any* disputed facts in this Order.

Even if the assertions of Plaintiffs' counsel were accurate—which they are not—it is clear is that insertion of the talismanic "truthful" into the offer cannot insulate an otherwise improper and unethical inducement of testimony from the proscription of Rule 4-3.4. In fact, when the prior version of the Rule was deemed silent on this point, the Florida Supreme Court expressly called for a revised Rule making clear that truthfulness, even if proved (and here there is no such proof), is no defense whatsoever to the inducement of a fact witness to give favorable testimony. *Florida Bar v. Cillo*, 606 So.2d 1161, 1162 (Fla.1992). In response to the Florida Supreme Court's concerns that the existing rule *might* permit a lawyer

---

³ In stark contrast, it is abundantly clear that Plaintiffs and their counsel have based their case against Albert on outright lies *for years*. As just one example, from its initial pleadings in this Court, through its recent opposition to Albert's motion for Summary Judgment a few weeks ago, Plaintiffs continue to misrepresent that Albert orchestrated an *en masse* walkout of all or most of Plaintiff's installer employees when he resigned in March 2016. See, e.g. Doc. 104, ¶¶ 77(k)(m)(q)(s)(w)(x)(z)(aa); Doc. 394-1, pp. 125-26. Yet, Plaintiffs' principal owner, CEO and corporate representative, Aaron Forrister, has admitted that he has always known this was not true as he was personally present in March 2016 and could not confirm that *any* installer left – guessing at most "one or two" drivers or installers resigned. Forrister dep., pp. 40-44. In fact, not even *one* installer left.

to offer some inducement for truthful testimony in *Cillo*, the Rule was amended to make clear that the truth or falsity of the testimony sought is immaterial to the prohibition on inducing a fact witness to give favorable testimony. *Florida Bar re: Amendments to Rules Regulating the Florida Bar*, 644 So.2d 282 (Fla. 1994).

> Further, the history of the rule indicates that it was amended to address situations such as the instant case. In 1992, in *Florida Bar v. Cillo*, 606 So.2d 1161 (Fla.1992), Cillo was accused of paying money to a former client as an inducement for the client to dismiss his Bar complaint against Cillo. ***The question arose whether it was misconduct to induce a witness to tell the truth by offering money or other valuable considerations***. At the time, there was no rule governing such a situation so we did not impose discipline for that conduct. We were concerned, however, that the payment of compensation other than costs to a witness could adversely affect credibility and fact-finding functions. We directed that a rule be developed to clarify that any compensation paid would be improper unless certain conditions were met. *Id*. at 1162. Thereafter, in 1994, in *Florida Bar re Amendments to Rules Regulating the Florida Bar*, 644 So.2d 282 (Fla.1994), we amended rule 4–3.4(b) to its present form. In so doing, we established that a witness may not be paid, unless the payments fall within the clearly delineated exceptions, such as payments for reasonable expenses or payments to an expert witness.

*The Florida Bar v. Wohl*, 842 So.2d 815 [emphasis added]. Thus, even if supported, any claim that Plaintiffs' counsel sought only "truthful" testimony is no exception to Rule 4-3.4. "The prohibition applies with equal force to payment for *truthful* testimony as to payment for false testimony." *Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 18, 2006); *quoting Golden Door Jewelry Creations, Inc. v. Lloyds Underwriters Non-Marine Ass'n*, 865 F. Supp. 1516, 1525 (S.D. Fla. 1994), aff'd in part, 117 F.3d 1328

---

Albert dep. p. 237.  Yet, five years later, Plaintiffs and their counsel persist in their blatant misrepresentations that Albert orchestrated an *en masse* departure of all, or at least half, of these same installers.

(11th Cir. 1997) quoting *In re Robinson*, 151 A.D. 589, 600, 136 N.Y.S. 548, 445 (1912), affirmed, 209 N.Y. 354, 103 N.E. 160 (1913)("The payment of a sum of money to a witness to 'tell the truth' is as clearly subversive of the proper administration of justice as to pay him to testify to what is not true.")  In at least suggesting that Plaintiffs' counsel sought only truthful testimony (without any evidentiary support), and that such alleged motives somehow vitiate the prohibitions of Rule 4-3.4, the Order is plainly and clearly erroneous on both the evidence *and* the law.

### IV.  Plaintiffs' Counsel's Written, Proposed Exchange Was a Prohibited Offer of an Inducement.

The Order's next erroneous conclusion is that Plaintiffs' counsel's written proposal to dismiss Albert from the pending litigation in exchange for certain substantive testimony from Albert, was not a sufficient "offer" to run afoul of Rule 4-3.4.  Notably, the Order cites no authority in support of this conclusion.

Initially, the Order completely ignores the fact, uncontested by Plaintiffs/their counsel,[4] that they accomplished an identical *quid pro quo* exchange with former Defendant, Daniel Valencia who traded altered testimony for a dismissal, two years earlier in this same litigation.  As more fully set forth in Albert's Motion and supporting documents, Plaintiffs' counsel repeatedly attempted to elicit helpful testimony from then-Defendant Valencia without success.  Doc. 373, pp. 2-3.  Then, after Valencia's repeated denials, he completely reversed his testimony, signed an affidavit proffered by Plaintiffs' counsel, and was

---

[4] Plaintiffs' response merely asserts that the Valencia affidavits/dismissal was handled by *prior* counsel and thus serves as no basis to disqualify *current* lead counsel, Mr. Mahaffey. Doc. 385, p. 2. Neither Plaintiffs' current nor former counsel offers any direct denial that there was an exchange of Valencia's affidavit testimony for the near simultaneous dismissal of Valencia – a fact they must know and have withheld from Albert in discovery by claiming it is privileged.

7

immediately dismissed from the lawsuit.  *Id*.  And, when Albert's counsel attempted to inquire into this apparent exchange, Plaintiffs asserted it was all handled by their counsel and blocked Albert's inquiry on attorney-client privilege grounds.  Doc. 373, Exhibit F, pp. 64-67; Ex. E – CST's Privilege Log.

Here, with that background and context, Plaintiffs' counsel proposed an apparently identical "exchange," in writing, to Albert, via his counsel:

> As confirmed in our meet and confer, **my clients would entertain a dismissal of Ross Albert in exchange for him testifying truthfully about the extensive involvement with Katzkin he engaged in to destroy the Orlando branch operations, as now proven by the CDA records**. This discussion must occur immediately or we will be filing a motion for evidentiary sanctions asking the Court to direct a finding on the two claims against Ross Albert based on his willful destruction and/or concealment of evidence and his false discovery responses. By our phone call today, I have completed my meet and confer on this motion and unless your advise in writing a willingness to frame a settlement agreement with Ross Albert agreeing to testify truthfully and provide his entire ESI, this motion will be filed next week.

Order, p. 3, quoting Doc. #373-1, Ex. G, July 30, 2020 email from Douglas Mahaffey to Courtney Wilson.[5]  The Order even quotes Mr. Mahaffey's own supporting Declaration conceding **"[t]he entire focus was for Albert to** recant and withdraw and **change** his discovery responses and **deposition testimony** ... [and cooperate with ESI discovery]".

---

[5] Remarkably, in his Opposition, Plaintiffs' counsel refers to *his own* language, in *his own* email, as an "out of context purported sentence" in "the unauthenticated email," and "objects" to *his own* email as inadmissible "hearsay."  Doc. 385, pp. 3, 2 & 4.  That the Order nevertheless implies that only *Albert's* veracity is open to question is sorely ironic.

Order, p. 4, quoting Doc. 385 (Mahaffey Dec.) at 16-17 [emphasis added].  Nevertheless, the Order then concludes that this email "includes no actual offer" and merely "suggests Plaintiffs would consider dismissing the case against Albert if certain outstanding issues could be resolved." Order, p. 7.

In this regard, the Order is erroneous in both respects.  First, Rule 4-3.4 prohibits offering any "inducement" of a fact witness to give favorable testimony.  No part of the Rule, the commentary, or any case law or ethics opinion requires that an offer must be sufficient to create a binding contractual obligation before it violates Rule 4-3.4.  Certainly, offering to "entertain" dismissal of this long and onerous litigation could serve no other purpose than to induce Albert to agree to the proposed "exchange."  The Order cites no contrary authority nor offers any justification for imposing a greater and more restrictive standard that neither the language nor the purpose of Rule 4-3.4 requires.

Secondly, and in any event, the "offer" *is* sufficiently definite even under more strict contract law.  See generally, *United States v. Health First, Inc.,* No. 6:14-cv-501-Orl-37DCI, at *9 (M.D. Fla. May 10, 2017)("Moreover, '[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on all the essential terms and seriously understand and intend the agreement to be binding on them.'") quoting *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So.2d 404, 408 (Fla. 1974).  Under Florida law, a promise to forebear from pursuing a legal right need not even be expressed in order to create a binding settlement/contract:

> It is well recognized that forbearance to enforce a legal right may constitute consideration for a promise. ***It is not required that the forbearance be provided for in express language or terms. This is so because a request by the***

9

> ***promisor or undertaking by the promisee to forebear may be implied from conduct of the parties and the nature of the transaction.*** Consideration is supplied when the circumstances are such that it is reasonable to infer that forbearance was desired and sought by the promisor and forbearance by the promisee follows.

*Citibank Int'l v. Mercogliano*, 574 So.2d 1190, 1191 (Fla. 3rd Dist. Ct. App. 1991) quoting *Boymer v. Birmelin*, 227 So.2d 358 (Fla. 3rd Dist. Ct. App. 1969).

Here, Plaintiffs' counsel not only verbally and in writing offered to "entertain dismissal" of the claims against Albert, the surrounding circumstances reinforce the effectiveness of the offered inducement. That is, Plaintiffs undisputedly dismissed identical claims against Valencia, a defendant is the same action, immediately upon his providing altered testimony to Plaintiffs and their counsel. This context, coupled with an express proposal to "entertain dismissal" of the claims against Albert "in exchange for" testimony favorable to Plaintiffs, makes clear that such an inducement was "offered" even under more strict contract law. The Order's contrary conclusion that Albert was offered no inducement, ignores the plain language of the offer, the prior conduct of the parties, and the foregoing law.

**V.      Proposing to Settle/Dismiss Onerous Litigation is a Prohibited Inducement.**

The Magistrate Judge's final erroneous conclusion was that Plaintiffs' offer to dismiss Albert from years' long and uniquely onerous 'scorched earth' litigation did not amount to an "inducement." Doc. 423, Order, p. 7. Indeed, Plaintiffs do not contest that the cost of this litigation has grown into the millions of dollars and may continue through trial and appeals. And, this does not even capture the personal cost in the loss of privacy, time and emotional turmoil Albert will continue to suffer by refusing Plaintiffs' proffered

"exchange." Indeed, with each successive filing, Albert's character and truthfulness is further impugned virtually without recourse.

Not surprisingly, courts have rejected the notion that an inducement made as part of a settlement to end pending litigation is somehow an unwritten exception to the Rule:

> At oral argument on this matter Plaintiffs' counsel attempted to make a distinction between the instant case and *Golden Door* by arguing that unlike in *Golden Door,* where the money was paid incident to an investigation, in this case the payment of money to witnesses was made incident to a settlement agreement. This is a distinction without a difference. Plaintiffs have cited no authority to support their novel argument and independent research by the undersigned has uncovered none. What's more, whether the money is paid incident to a settlement agreement, or simply to assure witness cooperation, ***the effect is the same: the witness has an incentive to testify favorably for the party paying him***.

*Ward v. Nierlich*, No. 99-14227 CIV, 2006 WL 5412626, at *4 (S.D. Fla. Sept. 18, 2006)[emphasis added].

The Order cites no authority that offering to settle and dismiss pending litigation is not a prohibited "inducement." Compare, *Delta Health Grp. Inc. v. Royal Surplus Lines Ins. Co.*, 327 F. App'x 860, 866 (11th Cir. 2009)(agreement to forbear from seeking even a purely declaratory remedy constitutes "overwhelming evidence of consideration" under Florida law). While common sense is sufficient to recognize that dismissing this litigation is an "inducement," several cases cited by Albert similarly conclude that threatening to *commence* civil litigation based upon the content of a witness' testimony is a violation of the same ethical rules. See, e.g., *Matter of Discipline of Callister*, 401 P.3d 211 (Nev. 2017)(threatening civil action, perjury and offering payment); *In re Smith*, 848 P.2d 612, 614 (Or. 1993)(lawyer suspended for 35 days for having letter delivered to IME doctor

11

threatening to sue the doctor if his opinion disfavored the claimant). The Order attempts to distinguish these cases because no litigation had yet commenced. However, to accept this proposition, unsupported by any authority, the Court must find that avoidance of *potential* litigation is somehow a more compelling inducement than termination of *actual and pending* litigation. This turns logic on its head and is contrary to the plain meaning of "inducement." See generally, *U.S. v. Murrell*, 368 F.3d 1283, 1287 (11th Cir. 2004)(plain meaning of "induce" is "[t]o lead or move by influence or persuasion; to prevail upon," or alternatively, "[t]o stimulate the occurrence of; cause.") citing The Am. Heritage Dictionary Of The English Language 671 (William Morris ed., Houghton Mifflin Co. 1981). There is no genuine doubt that Plaintiffs' offer to "entertain dismissal" was an inducement under this plain meaning of the term.

Further, where exceptions to prohibited inducements exist, they are spelled out and acknowledged by court decisions. The settlement or dismissal of a pending lawsuit is not among any such exceptions. Instead, the only exception to Rule 4-3.4, is a modest payment to fact witnesses to compensate them, not reward them, for costs actually incurred in testifying, and entirely unrelated to the *content* of their testimony.

> Under the plain language of rule 4-3.4(b), payments to witnesses are proper—and outside the scope of the prohibition on the "offer [of] an inducement to a witness"—if they fall within one of the following three categories: **[1]** "reasonable expenses incurred by the witness in attending or testifying at proceedings"; **[2]** "a reasonable, noncontingent fee for professional services of an expert witness"; or **[3]** "reasonable compensation to reimburse a witness for the loss of compensation incurred by reason of preparing for, attending, or testifying at proceedings." R. Regulating Fla. Bar 4-3.4(b). This Court has described these categories as "clearly delineated

exceptions" from the general prohibition of inducements to witnesses. *Wohl*, 842 So.2d at 815.

*Trial Practices, Inc. v. Hahn Loeser & Parks, LLP*, 260 So.3d 167, 171 (Fla. 2018). Neither the Rule nor any case applying it has found any other exception, for a settlement, dismissal of a pending lawsuit, or otherwise. Thus, the Order's conclusion that an offer to dismiss *this* litigation is not an inducement is contrary to logic, the plain meaning of the Rule, and the above-cited case law.

## VI. Conclusion

For the reasons set forth above, Albert respectfully requests that this Court reject the Order and, based upon the same undisputed facts, applicable Rule, and case law, revoke Attorney Mahaffey's grant of *pro hac vice* admission and/or issue an Order to Show Cause regarding this blatant misconduct by Plaintiffs and their counsel in offering inducements to persuade fact witnesses (Albert *and Valencia*) to give testimony favorable to Plaintiffs in this action.

Dated this 28th day of January, 2021.

Respectfully submitted,

By: */s/ Courtney B. Wilson*
Courtney B. Wilson, Esq.
Florida Bar No. 614580
E-Mail: cwilson@littler.com
Secondary: kljackson@littler.com
Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-Mail: lalter@littler.com
Secondary: btapia@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL 33131
Telephone: (305) 400-7500

        Facsimile:   (305) 603-2552

*ATTORNEYS FOR DEFENDANT,*
*ROSS ALBERT*

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 28th day of January, 2021, I filed a true and correct copy of the foregoing document with the Clerk of the Court via the CM/ECF Portal, and that the same was served on all counsel of record or pro se identified on the Service List via the CM/ECF Portal.

        */s/ Courtney B. Wilson*
        Courtney B. Wilson, Esq.

## SERVICE LIST

**ATTORNEYS FOR PLAINTIFFS, CLASSIC SOFT TRIM, INC. and ROADWIRE, LLC**

Kevin W. Shaughnessy, Esq.
Florida Bar No.: 473448
E-Mail: kshaughnessy@bakerlaw.com
Secondary: jnenstiel@bakerlaw.com
P. Alexander Quimby, Esq.
Florida Bar No. 099954
E-Mail: aquimby@bakerlaw.com
Secondary: jdorn@bakerlaw.com
BAKER & HOSTETLER, LLP
Sun Trust Center, Suite 2300
200 South Orange Avenue
Post Office Box 112
Orlando, FL 32801
Telephone: (407) 649-4000
Facsimile: (407) 841-0168

Douglas L. Mahaffey Esq. (*Pro Hac Vice*)
Email: dougm@mahaffeylaw.com
Secondary: janelle@mahaffeylaw.com
MAHAFFEY LAW GROUP, P.C.
20162 SW Birch Street, Suite 300
Newport Beach, CA 92660
Telephone: (949) 833-1400
Facsimile: ( 949) 263-8736

**ATTORNEYS FOR DEFENDANT, ROSS ALBERT**

Courtney B. Wilson, Esq.
Florida Bar No. 0614580
E-Mail: cwilson@littler.com
Secondary: kljackson@littler.com
Lindsay M. Alter, Esq.
Florida Bar No. 103237
E-Mail: lalter@littler.com
Secondary: btapia@littler.com
LITTLER MENDELSON, P.C.
Wells Fargo Center
333 SE 2nd Avenue, Suite 2700
Miami, FL  33131
Telephone:  (305) 400-7500
Facsimile:   (305) 603-2552

**ATTORNEYS FOR DEFENDANT, KATZKIN LEATHER, INC.**

Don Howarth, Esq. (*Pro Hac Vice*)
E-Mail: dhowarth@howarth-smith.com
Secondary:  edouesnard@howarth-smith.com
Suzelle M. Smith, Esq. (*Pro Hac Vice*)
E-mail: ssmith@howarth-smith.com
Secondary:  agilbert@howarth-smith.com
Padraic J. Glaspy, Esq. (*Pro Hac Vice*)
E-mail: pglaspy@howarth-smith.com
Tomas S. Glaspy, Esq. (*Pro Hac Vice*)
E-mail: tglaspy@howarth-smith.com
HOWARTH & SMITH
523 West Sixth Street, Suite 728
Los Angeles, CA 90014
Telephone: (213) 955-9400
Facsimile: (213) 622-0791

4833-7542-1657.2 049386.1006