**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**CLASSIC SOFT TRIM, INC.**
**and ROADWIRE LLC,**

          **Plaintiffs,**

**v.**                             **Case No:   6:18-cv-1237-Orl-78GJK**

**ROSS ALBERT, KATZKIN**
**LEATHER, INC., CLEARLIGHT**
**PARTNERS, LLC, and**
**CLEARLIGHT PARTNERS**
**MANAGEMENT, LLC,**

          **Defendants.**
_____

**ORDER**

This cause came on for consideration without oral argument on the following motion:

| |
|---|
| **MOTION:**   **PLAINTIFFS' MOTION FOR SANCTIONS AGAINST DEFENDANT KATZKIN LEATHER, INC. AND DON HOWARTH DISPOSITIVE MOTION SEEKING DEFAULT JUDGMENT UNDER RULE 37(b)(2)(vi) (Doc. No. 397)** |
| **FILED:**    **November 2, 2020** |
| _____ |
| **THEREON** it is **ORDERED** that the Motion is **GRANTED in part** and **DENIED in part.** |

## I.      INTRODUCTION.

Plaintiffs Classic Soft Trim, Inc. and Roadwire, LLC (collectively "CST") seek sanctions against Defendant Katzkin Leather, Inc. ("Katzkin") and its counsel Don Howarth[1] for their alleged violations of two discovery orders (Doc. Nos. 296 and 388) and for Katzkin's aiding and abetting Defendant Ross Albert's violation of other discovery orders.   Doc. No. 397.   CST seeks the ultimate, most severe sanction against Katzkin for its transgressions – default judgment.   *Id.*

## II.      BACKGROUND.

The Court will lay out the procedural background that has brought us to this point, but will address the parties' arguments in the analysis.

### A.      The June 17, 2020 Order (Doc. No. 296)

On March 10, 2020, Roadwire filed motions to compel against Kaztkin and Clearlight Partners LLC ("Clearlight").   Doc. Nos. 228; 230.   On May 5, 2020, the Court issued an order deferring any ruling on these motions and encouraged the parties to employ a neutral mediator/facilitator to work through a meet and confer with them.   Doc. No. 267.   The parties hired attorney Carolyn K. Alvarez to assist them.   Doc. No. 282.

---

[1] For reference, Mr. Howarth represents Katzkin, and has represented Clearlight Partners, LLC, Clearlight Partners Management, LLC, and also represented Joseph D. James in a deposition related to the non-party subpoena issued by CST that is discussed herein.   Doc. No. 407-1 at 1; 407-3 at 2.

On June 4, 2020 and June 8, 2020, Ms. Alvarez filed an initial report ("Initial Report") and a supplemental report ("Supplemental Report") on behalf of the parties. Doc. Nos. 282; 283.   The parties resolved multiple disputes as detailed in the Initial Report and the Supplemental Report but disputed issues remained. Doc. Nos. 282-1, 283 at 2.

In the Supplemental Report, Katzkin and Clearlight proposed specifically enumerated ESI searches which represented compromises and consolidation from the original search requests propounded to them by Roadwire (the "Joint Protocol").   Doc. Nos. 283; 283-1.   Roadwire offered responses to the proposals in the Joint Protocol accepting some, accepting some with conditions, and objecting to others in whole or in part.   *Id.*   In response, Katzkin and Clearlight made additional concessions.   *Id.*

 On June 17, 2020, the Court issued an order granting in part and denying in part the Motions to Compel Katzkin and Clearlight (the "June 17 Order").   Doc. No. 296.   The June 17 Order addressed the proposed searches in the Joint Protocol as well as three proposed versions of an "ESI Certification of Universe of Data Bases and Search Protocols Deployed" ("ESI Certification").   *Id.*   In its Order, the Court found that the ESI searches should be performed *as proposed by Katzkin and Clearlight*.   Doc. No. 296.   The Court indicated that the searches it was adopting included the additional concessions made by Katzkin and Clearlight which may

not have appeared in the original proposed compromise search as stated. *Id.* The Court also approved Katzkin and Clearlight's proposed ESI Certification. *Id.* Thus, the Joint Protocol was adopted based on each search as restated by Katzkin and Clearlight. Doc. No. 296. The Court did not adopt any of CST's independently proposed search requirements. *Id.*

B.    The Subpoena Order (Doc. No. 388)

Upon receipt of the June 17 Order, Katzkin and Clearlight each employed an IT consultant to conduct the required ESI searches for responsive documents. Doc. Nos. 388; 407-1 at 2. Clearlight hired Joseph D. James, Jr. *Id.* Upon completing his ESI search for Clearlight, Mr. James executed an ESI Certification on Clearlight's behalf. Doc. No. 397 at 330.

On July 27, 2020, CST issued a non-party subpoena (the "Subpoena") to depose Mr. James and provided notice of the same to the parties. Doc. No. 349-2. The Subpoena directed Mr. James to produce "Your entire filed related to your IT work in this case" at the deposition. *Id.* On August 10, 2020, Katzkin, Clearlight, Clearlight Partners Management, LLC, and Mr. James served CST with objections to the Subpoena. Doc. No. 349 at 3-5; 405-3.

On August 13, 2020, Clearlight and Clearlight Partners Management, LLC's (collectively the "Clearlight entities") Motion to Dismiss was granted. Doc. No.

347.   The Court found that CST had not adequately established that the Clearlight entities are subject to the personal jurisdiction of this Court.   *Id.* at 11.

On August 14, 2020, Katzkin filed a Motion for Protective Order or to Quash Subpoena to Non-Party Joseph James, Jr. (the "Motion to Quash").   Doc. No. 349. On October 8, 2020, the Court denied the Motion to Quash and directed that Mr. James's deposition occur within twenty-one days (the "Subpoena Order").   Doc. No. 388.    The Court found that CST was "entitled to depose Mr. James regarding the search he conducted and the resulting ESI Certification he executed."   *Id.* The Court imposed no restrictions or limitations on the Subpoena.   *Id.*

On October 24, 2020, Mr. James was deposed.   Doc. No. 407 at 2; 407-1 at 4. Mr. James brought his entire file to the deposition, but the documents within the file contained redactions.   *Id.* at 4.   Mr. Howarth advised CST's counsel, Mr. Mahaffey, that "matters unrelated to Mr. James' ESI search and certification were redacted from Mr. James' file, specifically including matters relating only to Katzkin's separate search and production which Mr. James was merely copied on but did not perform any work in connection with, as such materials fell outside the scope of Mr. James' search and certification." *Id.*; Doc. No. 407-2.

C.    CST's Motion for Sanctions

On November 2, 2020, CST filed a Motion for Sanctions against Katzkin and Mr. Howarth, ("Motion for Sanctions") seeking a default judgment under Rule

37(b)(2)(vi) for Katzkin's willful violation of the Court's June 17 Order and the Subpoena Order. Doc. No. 397; Doc. Nos. 296; 388.  Alternatively, CST seeks either an order prohibiting Katzkin from opposing certain claims in the Second Amended Complaint and from denying the related allegations or an order directing that specific designated facts be established against Katzkin. CST also seeks monetary sanctions.  *Id.* at 1-2.

CST argues that sanctions are warranted on three grounds: 1) Katzkin willfully violated the Court's June 17 Order by conducting searches that did not comply with the Court's order and by improperly withholding results of those searches; 2) Katzkin willfully violated the Subpoena Order by redacting information from Mr. James's file, which was provided at his deposition, and by refusing to disclose all of the ESI Mr. James's search revealed; and 3) Katzkin turned a blind eye and failed to prevent Albert from destroying ESI evidence and concealing certain email accounts that Katzkin knew or should have known existed.  *Id.*

On November 16, 2020, Katzkin filed a response in opposition to the Motion for Sanctions (the "Response") and the Declaration of Mr. Howarth.  Doc. Nos. 407; 407-1.  In its Response, Katzkin argues that: 1) it complied with all of the requirements of the June 17 Order; 2) Katzkin cannot be sanctioned for any of Clearlight's violations of the June 17 Order, nor can Clearlight be sanctioned

because the Order is void as to Clearlight; 3) the Subpoena Order was complied with fully, and Katzkin did not violate the Subpoena Order when Mr. Howarth redacted information from Mr. James's file related to Katzkin's ESI search; 4) Mr. James had none of the results of his ESI search in his file, so there were no additional documents to provide; and 5) Katzkin cannot be held responsible for Albert's discovery violations.  *Id.*

## II.    APPLICABLE LAW.

Under Federal Rule of Civil Procedure 37(b)(2), the Court has several options for imposing sanctions upon "a party or a party's officer, director, or managing agent" for failing to obey a discovery order. Those sanctions include "striking pleadings in whole or in part" and "rendering a default judgment against the disobedient party . . . ." Fed. R. Civ. P. 37(b)(2)(A)(iii), (vi).

"[A] default judgment sanction requires a willful or bad faith failure to obey a discovery order." *Malautea v. Suzuki Motor Co.*, 987 F.2d 1536, 1542 (11th Cir. 1993).   Negligence, a misunderstanding, or an inability to comply are not sufficient for a default under Rule 37. *Id.* "[T]he severe sanction of a dismissal or default judgment is appropriate only as a last resort, when less drastic sanctions would not ensure compliance with the court's orders." *Id.*

"A finding of prejudice is an important component of a decision to sanction a party with dismissal or default."  *Mitchel v. Vegassportsconsultants.com*, No. 18-

cv-61404, 2019 U.S. Dist. LEXIS 144603, at *9 (S.D. Fla. May 23, 2019) (quoting

*Inmuno Vital, Inc. v. Telemundo Grp., Inc.*, 203 F.R.D. 561, 573 (S.D. Fla. 2001)).

"Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and

insure the integrity of the discovery process."   *Dearth v. Hartford Fire Ins. Co.*, No.

16-cv-1603, 2018 U.S. Dist. LEXIS 228371, at *5 (M.D. Fla. Aug. 30, 2018) (quoting

*Gratton v. Great Am. Commc'ns*, 178 F.3d 1373, 1374-75 (11th Cir. 1999).

### III.   ANALYSIS.

#### A.   The June 17 Order

Very often, ESI is the heart and soul of a case, and it is certainly at the heart

of this one.   ESI captures the most candid, unadulterated reflection of what the

truth was at the time it was created; it is also ubiquitous, inhabiting every facet of

our daily lives, both professional and personal.   However, while it is

omnipresent, ESI's mere existence cannot solve every problem of proof.   Such is

the case here.   The parties hashed out certain enumerated searches through

conference, compromise, and court order. Those searches were conducted.   CST

is unhappy with the result, believing fervently that some undisclosed portion of

truth is still at large.   The question is whether CST's unrealized expectations are

attributable to sanctionable conduct on the part of Katzkin and Mr. Howarth for

hobbling the searches and withholding the "damning" evidence derived

therefrom, or whether the failure simply reflects the reality of searching vast amounts of data for responsive documents.

### 1.    Applicability of the June 17 Order to Clearlight

Katzkin argues that the June 17 Order is void as to Clearlight because this Court determined it did not have personal jurisdiction over Clearlight.   Doc. Nos. 407; 347.   Katzkin is correct that the June 17 Order can no longer be enforced against Clearlight.   If a court lacks jurisdiction over a plaintiff's claims, then any order other than an order of dismissal will be void and unenforceable.   *Sevier v. Ivey*, No. 2:17-cv-01473, 2018 U.S. Dist. LEXIS 241252, at *2 (N.D. Ala. Jan. 23, 2018) (citing *Juris v. Inamed Corp.*, 685 F.3d 1294, 1335 (11th Cir. 2012)); *MLB S. Beach Rental Portfolio Manager, LLC v. Epicouture, Inc.*, No. 17-20036-CIV, 2017 WL 11220682, at *3 (S.D. Fla. June 23, 2017), *report and recommendation adopted,* No. 17-20036-CIV, 2017 WL 11220678 (S.D. Fla. July 17, 2017) ("A judgment can be set aside for voidness where the court lacked jurisdiction or where the movant was denied due process. This includes lack of personal jurisdiction . . . .").[2]

More to the point, CST seeks sanctions solely against Katzkin, but Katzkin cannot be found to have willfully violated this Court's order based solely on

---

[2] Despite Katzkin's argument to the contrary, the fact that the June 17 Order cannot be enforced against Clearlight does not mean that the third-party Subpoena, and this Court's order requiring compliance with that Subpoena, is unenforceable against Mr. James or Katzkin.

deficiencies in Clearlight's compliance with the June 17 Order regardless of whether that order is now void.   CST has offered no basis to do so, and the Court specifically found that CST failed to demonstrate any supporting theory of agency, alter ego, or the like when dismissing this case against the Clearlight entities. Doc. No. 347 at 8-10. Thus, Katzkin's compliance stands as the sole issue before this Court.

2.    <em>Katzkin's Violations of the June 17 Order</em>

CST argues that Katzkin violated the June 17 Order three ways: 1)   Katzkin violated certain ground rules for the searches; 2) Katzkin failed to properly conduct the required searches for Search Requests 1, 2, 12, 17, 22, and 23; and 3) defense counsel improperly withheld search results as demonstrated by the existence of records of text messages obtained from third parties.   Doc. No. 397; <em>see</em> Doc. No. 283-1.[3]

a.    Searching for Deleted Text Messages

CST first complains that defense counsel directly instructed Katzkin's IT consultant not to document deleted or unrecoverable texts.[4]  Doc. No. 397 at 6, 40.

---

[3] The relevant searches are each enumerated in Doc. No. 283-1 as adopted by the Court in the June 17 Order and are incorporated herein by reference.

[4] Many of CST's arguments are based on information obtained from Mr. James's files and his ESI Certification related to his search.   Doc. No. 397 at 28-341.   For the reasons set forth above, those arguments are rejected.

In its Response, Katzkin explains that all searches included a search for *both* deleted and undeleted text messages as required by the June 17 Order.   Doc. No. 407 at 6-7.   Emails in Mr. James's file indicate that the relevant search parameters would include "both deleted and current text messages to or from the relevant individuals.   Responsive text messages will be produced whether they are current or deleted."   Doc. No. 397 at 43; *see also* Doc. No. 397 at 40.   Katzkin clarified, however, that the nature of a particular text, whether previously deleted or current, was not provided.   Doc. No. 407 at 6-7.   A review of the court-approved searches that involved text messages indicate that those searches would follow the same general protocol, to wit:

> Clearlight will have its IT consultant obtain the cell phone, power it up, and, using password access as appropriate, will do a search for responsive text messages including all text message applications, chat applications, and other text related applications . . . the search performed by the IT consultants will include both deleted and current text messages to or from the relevant individuals.   Responsive text messages will be produced whether they are current or deleted."

Doc. No. 283-1 at 6.   There is no indication that Katzkin's IT consultant was instructed not to search for deleted text messages and there is no indication that the he failed to do so.

b.      Searching for Emails

CST next argues that an agenda item in those same early emails between counsel and Katzkin's IT consultant directed him to "exclude attachments" with additional instructions to "ignore header, signature block and attachments" when conducting searches.   Doc. No. 397 at 6.   CST suggests that this means attachments were not provided with relevant emails, but provides no evidence that responsive emails were missing attachments.[5]  *Id.*   Instead, CST focuses on the fact that Mr. James did not know if attachments were included with the disclosed emails he provided.   Doc. No. 397 at 6.   This does nothing to advance CST's argument.

Katzkin explains that all attachments to responsive emails were provided. Doc. No. 407 at 7-8.   The parameters of the court-ordered searches were often to search "text of emails" not all other parts of the emails or the attachments thereto. *See, e.g.,* Doc. No. 283-1 at 3-4, 19 (Search 2 . . . search will be limited to emails that contain the words "Ron Leslie" and "Ross" or "Albert" in the text of the email). Katzkin explains that the referenced statements by counsel addressed what

---

[5] The Court finds it surprising the parties are quibbling about whether attachments to responsive emails were provided.   In any production of emails it should be self-evident whether or not attachments were provided from reviewing the documents.   If attachments were not provided, the Court would expect to see several exemplars of emails lacking attachments.   Such evidence is absent here.

components of the emails had to be searched, not whether attachments would be included with responsive emails.   Doc. No. 407 at 7.

Despite this initial discussion, Katzkin also states that the searches ultimately included all components of the emails as part of the searches because it was easier to conduct the searches in that manner, and as a result, the number of nonresponsive emails increased dramatically.   Doc. No. 407 at 14-16; 407-1 at 2. CST raises Katzkin's IT consultant's failure to certify what was actually found, but that was beyond the contemplated scope of the ESI Certifications which were meant to certify the search that was conducted, not its results.   Doc. Nos. 407 at 5; 397 at 6-7; 283-1 at 4, 20.   The Court finds CST has failed to demonstrate Katzkin's willful violation of the June 17 Order on this basis.

### c.    Specific Search Violations

CST enumerates deficiencies in Katzkin's Search Numbers 1, 2, 12, 17, and 22.[6]   Doc. No. 397 at 7-8.   CST claims Katzkin "mocked" these critical searches in the manner it chose to execute them. *Id.*   The Court has reviewed the searches as ordered by the Court, CST's challenges to the searches, and Katzkin's responses at length.   The Court finds that Katzkin complied with all the searches as set forth

---

[6] CST refers to Search 23, but the Court cannot locate an actual argument about why the search was improperly conducted.   Doc. No. 397 at 7.   The required search was a .pst search for certain individuals comprising a search in the text of emails for reference to Naomi Soto, Danny Valencia, Aaron Forrister, and Dwight Forrister.   Doc. No. 283-1 at 42. Also, while CST makes arguments as to other searches, those searches were only conducted by Clearlight and are not relevant to this Motion for Sanctions.

in the June 17 Order and that CST has otherwise failed to demonstrate the searches conducted were in violation of the June 17 Order.

Search 1 required a search of .pst files for emails as well as a search for hard copy files. Doc. No. 283-1 at 1-2.   CST claims an ESI search was not done.   Doc. No. 397.   Katzkin responds that both searches were conducted, just not at the same time.   Doc. No. 407 at 8-9; Doc. No. 397 at 264.

CST complains Search 2 excluded attachments and headers from the search, but the required search was limited to "the text of the email" and a broader search was ultimately conducted anyway.[7]  Doc. No. 407 at 9-10, 14-16; 283-1 at 4.

CST claims Search 12 was an "all writings" search which would have included text messages and memos attached to emails that had "Ron Leslie" or Orlando in an email *or the same document*. (Emphasis in original.) Doc. No. 397 at 7.   It was not an all writings search.   Instead, Search 12 required Katzkin to search its .pst files of Tim Clyde, Brooks Mayberry, Ron Leslie, Dave Sheffler and Bill North for emails.   Doc. No. 283-1 at 19.   CST fails to demonstrate that Katzkin did not conduct a search of the .pst files of these individuals as required.

CST similarly claims that Search 17 was for any documents that had "Dave

---

[7] Search 2 was an ESI search of the individuals likely to have responsive information with Katzkin searching the .pst files of Tim Clyde, Brooks Mayberry, Ron Leslie, Dave Sheffler, and Bill North. Doc. No. 283-1 at 3.   The search was limited to emails that contain the words 'Ron Leslie' and 'Ross' or 'Albert' in the text of the email for the time period January 1, 2015 to July 1, 2018.   *Id.* at 3-4.

Sheffler and Orlando ***in the same document*** *or email,* (with no restriction on word distance)." (Emphasis in original.) Doc. No. 397 at 7.   CST claims this search was improperly limited to a 30 word proximity search in emails only.   Search 17 required Katzkin to search its .pst files of certain enumerated individuals for responsive information based on CST's agreement to limit this search to emails. Doc. No. 283-1 at 31, 32.   CST agreed to limit this request to emails sent to or from Tim Clyde, Brooks Mayberry, Ron Leslie, Dave Sheffler, and Bill North.   Doc. No. 283-1 at 32.   Katzkin agreed to a search of emails that contain Dave Sheffler and Orlando within 30 words as a compromise.   *Id.*   CST provides no evidence that Katzkin did not perform this search.

Finally, CST complains that Search 22 was redacted from Mr. James's file, but does not explain how Katzkin failed to comply with the court-ordered search based on that fact alone.   Doc. No. 397 at 8.

### d.   Withholding of Responsive Documents

CST argues that Katzkin willfully withheld text messages and emails in violation of the June 17 Order.   CST cites to records from cellular providers which reflect text messages between Ron Leslie and Ross Albert that should have been disclosed as part of Katzkin's to the June 17 Order.[8]   Doc. No. 397 at 8-9; 341-50.

---

[8] CST also mentions 32 SMS messages between Sheffler and Albert, but cites to "Exhibit 10" which only appears to include text messages between Ross Albert and Ron Leslie.   Doc. No. 397 at 8-9, 341-50.

CST claims that "the most critical text messages between Albert to Leslie in the subject date range were not looked for, and/or counsel withheld the damning ones." Doc. No. 397 at 8. CST also argues that there was a willful violation because 32 SMS messages from Sheffler to Albert during the critical dates were not produced. *Id.* at 7-8.

Unfortunately, CST's argument fails on many levels. First, the records demonstrate only that text messages were sent or received, there is no content. Second, Katzkin was required to provide *responsive* text messages and emails within searches that often had other temporal limitations like that the message be business-related. *See generally* Doc. No. 283-1. Third, CST provides no evidence that responsive text messages were not produced. The mere existence of text messages, without more, does not prove wrongdoing.[9]

---

[9] CST seeks the most extreme sanctions against Katzkin and has failed to marshal even the most basic evidence in support of its arguments. Often the Court is left to hunt for the point to be made, the correct exhibit being referenced, or is asked to draw inferences from next to nothing. *See Reese v. Herbert*, 527 F.3d 1253, 1268 (11th Cir. 2008) ("judges are not like pigs, hunting for truffles buried in briefs" (quoting *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003)). For example, one citation in support of CST's claim of the proof of a concealed text message is to "Exhibit 1." Doc. No. 397 at 8-9. Remarkably, Exhibit 1 is Mr. James's rather voluminous file from his IT work. *See* Doc. No. 397 at 28-318. Similarly, CST argues that Exhibit 10 (Doc. No. 397 at 341-50) is proof that the "most critical text messages" between Albert to Leslie in the subject date range were not looked for, and/or counsel withheld the damning ones. Doc. No. 397 at 8. First, CST fails to explain to which search it claims these text messages would be responsive. Second, despite the "critical" nature of these text messages and the allegation that counsel has *willfully concealed* them, CST does nothing more than highlight their existence and cry foul. There are barely two sentences dedicated to this bombshell evidence, and those sentences do not even reference a specific search, rather they are inserted in and among a myriad of complaints regarding multiple searches. Doc. No. 397 at 7-8.

Based on the foregoing, the Court finds that CST has failed to satisfy its burden to prove that Katzkin or its counsel willfully withheld responsive text messages or emails in violation of the June 17 Order.

      B.    <u>The Subpoena Order</u>

CST seeks to sanction Katzkin for its willful violation of the Subpoena Order. Doc. No. 397 at 9.   The Subpoena Order was issued in response to Katzkin's Motion to Quash and a request for a protective order.   Doc. No. 388. The Subpoena Order directed that Mr. James's deposition be rescheduled.   Doc. No. 388.   No limitations were placed on the Subpoena as issued. *Id.*

Despite this fact, Mr. James appeared for deposition and brought his entire file with significant redactions.[10]   Doc. No. 407 at 2.   Mr. Howarth chose to redact certain portions of Mr. James's file that he deemed not relevant to Mr. James's ESI search for Clearlight.   Doc. No. 407 at 3.   Mr. Howarth claims that the language of the Subpoena Order authorized these redactions and that Mr. James fully complied with the Subpoena Order.   Doc. No. 407-1 at 2.   This is patently false. Counsel's attempt to rationalize his wholly improper, unauthorized, unilateral redactions is utterly disingenuous.

---

[10]  The Court accepts Mr. James's representation that this was his entire file and that he did not retain a copy of the documents retrieved from the search. Doc. Nos. 407 at 2; 407-3 at 4.

The Subpoena clearly stated that Mr. James was to provide his "entire file" related to his IT work in this case.   Doc. No. 349-2 at 2.   Katzkin, the Clearlight entities, and Mr. James objected to the Subpoena on multiple grounds. Doc. No. 349-3.    Katzkin then filed its Motion to Quash with this Court raising those same objections. Doc. No. 349.   At no time and in no way did Katzkin, the Clearlight entities, or Mr. James as part of their objections or the Motion to Quash to seek to limit disclosure of the contents within his file because some of that information related to Katzkin's searches.   *Id.*   That fact is not only reflected in the Motion to Quash, but in this Court's order *denying* the Motion to Quash.   Doc. No. 388.

Instead, Katzkin chose to unilaterally limit the scope of the Subpoena in open defiance of this Court's order.   Doc. No. 407-2 at 2.   In contrast to Mr. Howarth's characterization of the Subpoena Order, the Court finds there was no basis from which counsel could conclude that anything less than Mr. James's entire file should be provided pursuant to the terms of the Subpoena.[11] Doc. No. 388. Litigants are not charged with *carte blanche* "to willy-nilly redact information from

---

[11] It is a rare document that contains only relevant information, and unilateral redactions are disfavored because they impede the just, speedy, and inexpensive determinations of every action and proceeding. *Bartholomew v. Avalon Capital Grp., Inc.*, 278 F.R.D. 441, 451 (D. Minn. 2011) (internal citation omitted) (emphasis added). Unilaterally redacting produced documents is also inconsistent with Federal Rule of Civil Procedure 26's overarching purpose of permitting broad discovery.   Rule 26(b)(1) specifically provides that relevant information *need not be admissible* at the trial if the discovery appears reasonably calculated to *lead to* the discovery of admissible evidence. (Emphasis added). *Bonnell v. Carnival Corp.*, No. 13-22265-CIV, 2014 U.S. Dist. LEXIS 22459, at *7-11 (S.D. Fla. Jan. 31, 2014).

otherwise responsive documents in the absence of privilege, merely because the producing party concludes on its own that some words, phrases, or paragraphs are somehow not relevant." *Bonnell v. Carnival Corp.*, No. 13-22265-CIV, 2014 U.S. Dist. LEXIS 22459, at *7-11 (S.D. Fla. Jan. 31, 2014) (finding that Carnival could not unilaterally redact portions of otherwise discoverable, non-privileged documents based on its own belief that portions of the documents were irrelevant to the claims in that case); *see also Engage Healthcare Communs., LLC v. Intellisphere, LLC*, No. 12-cv-787, 2017 U.S. Dist. LEXIS 135101, at *11 (D.N.J. Apr. 25, 2017) (unilateral redactions based on one party's subjective view of relevancy are improper); *Toyo Tire & Rubber Co. v. CIA Wheel Grp.*, No. SA CV 15-00246, 2016 U.S. Dist. LEXIS 184189, at *6-7 (C.D. Cal. Feb. 23, 2016) (producing party may not redact otherwise responsive documents because those documents contain irrelevant material); *Melchior v. Hilite Int'l, Inc.*, No. 13-50177, 2013 U.S. Dist. LEXIS 71393, at *6 (E.D. Mich. May 21, 2013) (a subpoenaed non-party cannot unilaterally redact portions of documents based on relevancy ground).

As such, the Court finds that Katzkin and Mr. Howarth have *willfully* violated the Subpoena Order by redacting information from the file Mr. James provided to CST at his deposition.   As Katzkin has indicated it retained a copy of the unredacted file (Doc. No. 407 at 4), it shall produce the unredacted file to CST

within 48 hours of the entry of this Order or face additional sanctions, up to and including default judgment.

### C.   Albert's Discovery Violations

CST argues Katzkin knowingly facilitated Albert's destruction and concealment of evidence.   Doc. No. 397 at 14-17.   CST's counsel provides an affidavit with only one substantive paragraph which offers no facts, only a conclusory statement Albert willfully violated discovery orders by failing to disclose his cloud email accounts and failing to turn over a single text message from his phones.   Doc. No. 397 at 26.   CST argues that Katzkin had a duty to preserve evidence; had a duty to prevent Albert from destroying evidence; had a duty to disclose and access cloud-accounts Albert owned which were accessed from his company laptop; and had a duty to search its backups for relevant information.   Doc. No. 397 at 14-17.

Albert is a separate defendant in this action, he has his own counsel of record, and CST has filed a motion for sanctions against both for Albert's discovery violations.   Doc. No. 395.   The orders Albert is alleged to have violated are not the same orders Katzkin is alleged to have violated. *See* Doc. No. 395 (claiming willful violation of Doc. Nos. 350, 366).   However, CST seeks to hold Katzkin accountable for Albert's alleged actions based on the fact that Katzkin's counsel is really Albert's counsel, Katzkin knew what Albert was doing, and Katzkin did not

preserve Albert's company phone and laptop back up which it was required to do because there was active litigation and an outstanding preservation letter.[12]   *Id.*

Spoliation is the intentional concealment, destruction, mutilation, or material alteration of evidence.   *Southeastern Mechanical Services, Inc. v. Brody*, 657 F. Supp. 2d 1293, 1299 (M.D. Fla. 2009).   The alleged spoliation involves ESI, so Rule 37(e) applies. *See Nationwide Life Ins. Co. v. Betzer*, 2019 U.S. Dist. LEXIS 194165, at *19 (M.D. Fla. Oct. 28, 2019).   First, the Court must determine whether Katzkin had a duty to preserve evidence.   Rule 37(e) does not apply when information is lost before a duty to preserve arises.   *See Ala. Aircraft Indus. v. Boeing Co.*, 319 F.R.D. 730, 740 (N.D. Ala. 2017).   Generally, the assessment begins with when the duty to preserve was triggered.   Here, however, CST fails to even satisfy a more basic, threshold requirement - duty.   CST provides no evidence that Katzkin controlled the iPhone 6 and its backup or the cloud-based accounts Albert owned.   Doc. No. 397.   Instead, CST relies on the insinuation that Katzkin's counsel was Albert's counsel and that Katzkin "knew" and turned a blind eye to Albert's actions.   On this basis, CST seeks to impose obligations on Katzkin.   CST makes an argument that Katzkin failed to maintain its own databases for Albert's ESI, but presents absolutely no evidence of such a failure.

---

[12] CST provides no citation to the preservation letter it purports to rely on and no such letter appears in the attachments to its Motion for Sanctions. Thus, once again, CST fails to support their allegations.

CST identifies an iPhone 6 that Katzkin failed to preserve, despite active litigation and a preservation letter, claiming that Katzkin stood idly by while Albert destroyed its phone and then "aided him as he produced none of the thousands of other text messages he sent during the subject Court-ordered time frame."   Doc. No. 397 at 15.   However, CST offers no evidence as to how Katzkin knew, how Katzkin had control, and what the failure was.[13]

CST next claims that Katzkin aided Albert in concealing his classicdesignleather@gmail.com account.   Doc. No. 397 at 15.   CST claims Katzkin knew of this account as "they too sent emails to that address."   Doc. No. 397 at 16.   CST relies on a single screenshot of an email request from a gmail account owned by Ron Leslie to the classicdesignleather@gmail.com account. Doc. No. 397 at 378.   CST claims that evidence of two other cloud-based accounts were discovered in a forensic search of Albert's work laptop: theeleatherman@gmail.com and theeleatherman@icloud.com.   Doc. No. 397 at 16-17.   CST claims that despite knowing about these accounts, Katzkin has failed to acknowledge them or search the Google accounts which Albert accessed from his computer.   Id.   Again, CST provides no support for these allegations and fails to demonstrate that Katzkin controlled these accounts.

---

[13] As mentioned earlier, CST does not even provide the preservation letter it claims triggered Katzkin's obligation. See supra note 12.

CST's IT expert states that there could be backup and emails available in the cloud-based accounts. Doc. No. 397-1.   To access Albert's cloud accounts, the IT expert would need Albert's username, password, and second factor authentication.   Doc. No. 397-1 at 5-6.   CST has provided no evidence that Katzkin had access to the information required to access these accounts, or that Katzkin had any control over these accounts which were created by Albert.

CST again argues that Katzkin has an obligation "under the rules of preservation of known ESI" to make sure Albert did not delete emails on his company laptop in his cloud-based accounts.   Doc. No. 397 at 17.   CST fails to provide sufficient evidence to support this claim.   There is no evidence that Katzkin knew about these accounts, Katzkin had control over these accounts, that emails were removed from Albert's work laptop, or that the emails were even located on the laptop to begin with, and when the duty to preserve was even triggered.[14]

Based on the record presented, the Court finds that CST fails to even move past step one of the requisite analysis for spoliation of evidence under Rule 37(e).

---

[14] In fact, CST's expert states that he found numerous emails from Albert's theeleatherman Gmail account to his Katzkin email account on Albert's work laptop.   Doc. No. 397-1 at 6.   The expert indicated that any other emails that may have been sent to other recipients were not located on the laptop. *Id.*   The expert explained the only way to access those emails was from the Gmail account directly.   *Id.*   The expert does not state that any emails from the Gmail account had previously been on the laptop or were removed from the laptop.

Thus, the Court finds that Katzkin did not engage in destruction and concealment of evidence with respect to Albert's ESI.

> D.   Attorney's Fees

Under Rule 37(b)(2)(C), the Court must order Katzkin, Mr. Howarth, or both to pay CST's reasonable expenses, including attorney's fees, related to the violation of the Subpoena Order unless other circumstances make such an award unjust.   Fed. R. Civ. P. 37(b)(2)(C).   In light of Katzkin's singular willful violation in redacting Mr. James's file, a monetary sanction of $500 against Mr. Howarth is warranted, just, and proportional.[15]   *See Naviant Mktg. Solutions, Inc. v. Larry Tucker, Inc.*, 339 F.3d 180, 185 (3d Cir. 2003) (an attorney may be sanctioned for personally violating a discovery order or for advising a client to do so).   However, the vast majority of the relief requested in the Motion for Sanctions has been denied.   Therefore, the parties shall otherwise bear their own attorney's fees and costs.

## V.   EPILOGUE

CST filed a largely unsupported motion containing serious allegations of misconduct for which CST completely failed to meet its burden of proof save one instance.   What could have been presented as a short concise motion to compel

---

[15] The Court has considered whether a lesser sanction such as admonishment or reprimand would suffice in this instances and finds such sanctions are insufficient.

related to Mr. James's redacted file, which in turn could have garnered immediate relief, became a slog through 400 plus pages of inflammatory accusations and outsized exhibits that fared no better.   This is not the first time the Court has had to deal with conduct from these lawyers that is unrelentingly contentious and combative.   The blame rest squarely on the shoulders of every attorney in this case and their tendency to jump to conclusions at every turn.   Counsel's chosen course of action throughout this litigation has had a tangible impact on their clients, the economics of this case, and the ability of the Court to move this matter forward to resolution.   The Court would observe, and not for the first time, that the *pro hac vice* admission of both Mr. Mahaffey and Mr. Howarth may have been improvidently granted.

Accordingly, it is **ORDERED** that the Motion (Doc. No. 397) is **GRANTED in part** and **DENIED in part** as follows:

1. Katzkin shall provide the unredacted entire file produced at Mr. James's deposition to CST within **forty-eight (48) hours** from the entry of this Order;

2. Mr. Howarth is ordered to pay CST $500.00 **within seven (7) days** from the date of this order; and

3. The Motion is otherwise **DENIED.**

**DONE** in Orlando, Florida on February 9, 2021.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties